730 So.2d 296 (1999)
Christopher BAIN, Appellant,
v.
STATE of Florida, Appellee.
No. 97-02007
District Court of Appeal of Florida, Second District.
January 29, 1999.
Rehearing Denied April 16, 1999.
*297 James Marion Moorman, Public Defender, and Jeffrey Sullivan, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellee.
EN BANC
NORTHCUTT, Judge.
This case poses the threshold question of whether we have jurisdiction to entertain an appeal of a criminal sentence when the defendant has failed to preserve any of his asserted errors. Because the issue is one of exceptional importance, and because we recede in part from one of our previous decisions, on our own motion we consider the matter en banc. See Fla. R.App. P. 9.331(a).
In November 1996, the State charged Christopher Bain with robbery in two separate cases. Bain pleaded guilty to robbery, without a weapon, and to grand theft. In his plea agreement, he acknowledged that he qualified for treatment as a habitual violent felony offender. In April 1997, the circuit court sentenced Bain to a fifteen-year minimum mandatory term of imprisonment as a habitual violent felony offender on the robbery charge, and to a concurrent term of ten years' imprisonment as a habitual felony offender on the grand theft charge. On appeal he argues that the minimum mandatory aspect of the robbery sentence exceeds that permitted by the habitual violent felony offender statute. He challenges the grand theft sentence on the ground that the State did not prove that he was a habitual felony offender.
When entering his plea, Bain reserved no issues for appeal. He did not object to his sentences at the time they were imposed, nor did he move to correct them under Florida Rule of Criminal Procedure 3.800(b), or to withdraw his plea. Therefore, Bain did not preserve any alleged sentencing errors for appeal. But he asks us to review the sentences on the ground that they constitute fundamental error. We conclude that we have jurisdiction in this case, and we reverse.

*298 APPELLATE JURISDICTION UNDER THE CRIMINAL APPEAL REFORM ACT
On the question of jurisdiction, we must examine two restrictions imposed by the Criminal Appeal Reform Act of 1996, section 924.051, Florida Statutes (Supp.1996). Subsection (3) of the statute addresses criminal appeals generally, and subsection (4) relates to appeals following pleas of guilty or nolo contendere.
We first consider the general provision. Subsection(3) states:
An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.
When analyzing the effect of this provision we make three important assumptions, all of which derive from our supreme court's discussion of the Act when adopting corresponding amendments to Florida Rule of Appellate Procedure 9.140. See Amendments to the Florida Rules of Appellate Procedure, 696 So.2d 1103 (Fla.1996). There being no case or controversy giving rise to the Amendments decision, the court's remarks arguably were dicta. Certainly, dicta or no, they are subject to being revisited. That being so, we note that, although we abide by these three propositions, we do not necessarily agree with one of them.

Three Assumptions
Our first assumption: The Florida Constitution grants to our citizens the right to appeal, and confers upon the appellate courts jurisdiction to review, all final orders of trial courts. The supreme court expressed this conclusion in Amendments, receding from its earlier holding to the contrary in State v. Creighton, 469 So.2d 735 (Fla.1985). The court came to this view because the documentary history of the 1972 revision of article V does not suggest that the revisers intended to remove from the constitution the right to appeal, which had been set forth in the immediately preceding constitution in an arguably more explicit fashion. See Amendments, 696 So.2d at 1104.
There is another reason for finding a constitutional right to appeal all final orders. The constitution, in article V, section 4(b)(1), provides that district courts of appeal shall have jurisdiction to hear "appeals, that may be taken as a matter of right, from final judgments or orders of trial courts...." (Emphasis added.) Standing alone, that language begs the question whether all appeals from final orders, or only some appeals from final orders, may be taken as a matter of right.[1] We believe there is a right to appeal all final orders, because the constitution no-where grants authority to designate which final orders are appealable by right, and which are not. This is a significant omission, considering that article V otherwise specifies who shall make decisions affecting the jurisdiction of the courts. For example, in section 4(b)(1), the supreme court is charged with determining which, if any, nonfinal orders may be appealed. Under section 3(b)(2), the legislature is empowered to grant the supreme court jurisdiction to hear appeals of final orders in bond validation proceedings *299 and to review statewide agency action relating to electric, gas, or telephone utilities' rates or service. Pursuant to section 4(b)(2), the legislature determines whether district courts of appeal have jurisdiction to review administrative action.[2]
As can be seen, the revisers of article V were quite explicit about who is to shape the jurisdiction of our courts in specific ways. But they did not appoint the arbiter of which final orders are appealable by right. The only reasonable explanation for this is that all final orders are appealable as a matter of right. That construction is consistent with the admittedly imprecise language of article V, section 4(b)(1), with the documentary history of the 1972 constitutional revision, and with the overall scheme of article V.
That same reasoning, however, undermines our confidence in the second assumption we take from the Amendments decision. That is, "the legislature may implement this constitutional right and place reasonable conditions upon it so long as they do not thwart the litigants' legitimate appellate rights." Amendments, 696 So.2d at 1104. Assuming the legislature has authority to implement the right to appeal final orders, nevertheless we question whether it has discretion to condition (or limit, or qualify) this right when the constitution has not, regardless of the perceived reasonableness of the conditions. See Sparkman v. State ex rel. Scott, 58 So.2d 431, 432 (Fla.1952) (holding that express or implied provisions of constitution cannot be altered, contracted, or enlarged by legislative enactments).
Our concern is heightened by our recognition that, as previously discussed, the constitution expressly empowers the legislature to affect the courts' jurisdiction in other, specific, respects. But nowhere does it suggest that the legislature may prescribe whether, or under what conditions, a final order may be appealed.[3] It is unlikely that the revisers would expressly grant such power to the legislature in some instances but not in others, unless the legislature was meant to have the power only where specified.
Additionally, we believe that two other aspects of the constitution mandate caution when inferring legislative authority to control the power of the judiciary. The first, of course, is the separation of powers doctrine, embodied in the constitution at article II, section 3.[4] The other is the constitution's guarantee of free access to the courts, contained in the Declaration of Rights, article I, section 21.[5] This guarantee includes the appellate courts. See Kennedy v. Guarantee Management Services, Inc., 667 So.2d 1013 (Fla. 3d DCA 1996). And it requires that any attempt to limit the right of access to courts must be liberally construed in favor of the right. See Kennedy, 667 So.2d at 1014; Lehmann v. Cloniger, 294 So.2d 344 (Fla. 1st DCA 1974). Surely, in light of these principles, any question about legislative power to encroach upon an important appellate right guaranteed by the constitution must be resolved against the encroachment.
*300 The foregoing factors, individually and collectively, cause us to doubt that the legislature may condition, limit, or qualify our jurisdiction to hear appeals of final orders, when the constitution declares that all final orders may be appealed as a matter of right. Despite our reservations, however, we must defer to our supreme court's expression in this regard. Therefore, we assume that the legislature does have this authority, but we exercise our discretion to certify this question to the supreme court. See U.S. Steel Corp. v. Save Sand Key, Inc., 303 So.2d 9 (Fla.1974).
The last assumption underlying the discussion to follow is that in the Criminal Appeal Reform Act the legislature endeavored to limit the jurisdiction of Florida's appellate courts to entertain appeals from final orders in criminal cases. In Denson v. State, 711 So.2d 1225 (Fla. 2d DCA 1998), we ventured that the first sentence of section 924.051(3) limits our jurisdiction, and that the second sentence endeavors to restrict either our scope of review or our standard of review, or both. This view is not universal among the district courts of appeal. The First, Third, and Fourth Districts appear to treat the entire Act as a nonjurisdictional restriction of the appellate scope and standard of review in criminal cases. See Stone v. State, 688 So.2d 1006 (Fla. 1st DCA 1997), review denied, 697 So.2d 512 (Fla.1997); Neal v. State, 688 So.2d 392 (Fla. 1st DCA 1997), review denied, 698 So.2d 543 (Fla.1997); Jefferson v. State, 23 Fla. L. Weekly D2305, 724 So.2d 105 (Fla. 3d DCA 1998); Thompson v. State, 708 So.2d 289 (Fla. 4th DCA 1998). But it seems clear from the Amendments opinion that the supreme court viewed the Act as jurisdictional; hence, the court's discussion of the constitutional right to appeal final orders, and the legislature's authority to impose conditions on that right, in the context of the Act. See Amendments, 696 So.2d at 1104.
Moreover, the legislative history of the Act confirms that the legislature understood that section 924.051 not only affected the scope and standards of appellate review, but went directly to the right of appeal. This belief was founded on the lawmakers' reasonable belief, based on the then-extant Creighton decision, that the Florida Constitution did not establish a right to appeal, and that appellate rights in criminal cases were strictly statutory. See Bill Analysis & Economic Impact Statement for PCS/HB 211, pp. 2, 5-7, House of Representatives Committee on Criminal Justice, March 19, 1996.
Keeping in mind the foregoing three assumptionsthat there is a Florida constitutional right to appeal all final orders, and concomitant appellate jurisdiction to entertain such appeals; that the legislature may impose reasonable conditions on that right; and that in criminal cases the Criminal Appeal Reform Act limits the right of appeal, and thereby limits our jurisdictionwe turn to the central issue posed by Bain's case. That is, whether and to what extent we may review unpreserved sentencing errors.

Appellate Review of Unpreserved Sentencing Errors
Recall that our jurisdiction under the first sentence of section 924.051(3) is two-fold. We may entertain an appeal if it alleges prejudicial error that has been "properly preserved or, if not properly preserved, would constitute fundamental error." Recall, as well, that Bain did not preserve either of his alleged sentencing errors in the circuit court. Therefore, under the Act we have no jurisdiction unless one of the errors is fundamental.
The district courts of appeal differ about which sentencing errors, if any, may be deemed to be fundamental. The Fifth District has concluded that there is no such thing as a fundamental sentencing error, and that an appeal such as this one may not be entertained. See Maddox v. State, 708 So.2d 617 (Fla. 5th DCA 1998) (en banc), review granted, 718 So.2d 169 (Fla.1998). The Fourth District agrees with Maddox except with respect to illegal sentences, which it considers to be reviewable under the Act as fundamental error. See Hyden v. State, 715 So.2d 960 (Fla. 4th DCA 1998) (en banc); Harriel v. State, 710 So.2d 102 (Fla. 4th DCA 1998) (en banc).
*301 Although the First and Third Districts have not published similar comprehensive discussions of their authority under the Act, their decisions leave no doubt that, at the least, they consider illegal sentences to be fundamental error, and reviewable as such. See Nelson v. State, 719 So.2d 1230, 23 Fla. L. Weekly D2241 (Fla. 1st DCA 1998) (general division en banc); McDaniel v. State, 704 So.2d 686 (Fla. 1st DCA 1997), opinion corrected, 706 So.2d 923 (Fla. 1st DCA 1998); Jordan v. State, 23 Fla. L. Weekly D2130, 728 So.2d 748 (Fla. 3d DCA 1998). As we will explain in depth below, we disagree with Maddox. In our view, certain sentencing errors are fundamental, and for that reason we have jurisdiction to review them under the Act.
We indirectly touched on this issue in Denson. In that case the defendant properly preserved a sentencing error, but on appeal he raised two additional, unpreserved, sentencing errors. We concluded that, under the constitutional separation of powers, the legislature cannot restrict our scope or standard of review in an unreasonable manner that eliminates our judicial discretion to correct "illegal sentences and other serious, patent sentencing errors." 711 So.2d at 1230. Because we had acquired jurisdiction based on the preserved error, we proceeded to examine the two unpreserved ones, which we deemed to be serious, patent errors, and reversed.
We reaffirm the principle that we articulated and applied in Denson. But we take this opportunity to revisit and, to some extent, revise our remarks regarding fundamental sentencing error and the Criminal Appeal Reform Act. We note that, because our jurisdiction in Denson was founded on a preserved error, and because the other two errors rose to the level of serious, patent error, our ruling did not require us to determine whether those errors were fundamental. Therefore, our statements about fundamental error were dicta.
In Denson we posited that when the legislature enacted section 924.051, its concept of fundamental error was narrower than that previously employed by the courts. On further reflection, we conclude otherwise. When crafting the statute the lawmakers were well aware that "fundamental error" is an important term of art in the law, and they were familiar with the range of compelling circumstances in which courts have applied the concept to permit appellate review of unpreserved errors. See Ford v. Wainwright, 451 So.2d 471, 475 (Fla.1984) (stating that legislature is presumed to be acquainted with judicial decisions on the subject matter of statutes it enacts). In light of this, the legislature's unqualified use of the term fundamental error in the first sentence of section 924.051(3) compels the conclusion that Florida's appellate courts are meant to continue exercising jurisdiction in cases presenting such circumstances. See City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 579 n. 2 (Fla.1984) (explaining that terms of special legal significance are presumed to have been used by legislature according to their legal meanings). Moreover, the specific use of the term in the second sentence of that section, in reference to sentencing, forecloses any suggestion that the legislature's concept of fundamental error excludes sentencing error. See Goldstein v. Acme Concrete Corp., 103 So.2d 202, 204 (Fla.1958) (noting that legislature is presumed to have meant the same thing when it used same word in related statutory provisions).
As we have seen, when the legislature enacted the Criminal Appeal Reform Act it did not alter the appellate courts' historic jurisdiction to correct fundamental error. The next question is whether the Florida Supreme Court has done so with respect to sentencing issues. Partly in response to the Act, the supreme court amended and promulgated various rules of criminal and appellate procedure.[6]Maddox concluded, and Denson suggested, that these rules evince an intent to abolish fundamental error in the sentencing context. We think not. It is true, as we pointed out in Denson, that the promulgation of rule 3.800(b) now permits a trial court to *302 correct its own sentencing errors upon the filing of a timely motion. But the question of whether an error is fundamental has never turned on the existence vel non of a mechanism for correcting it in the lower court. If it did, no error that could have been corrected by a contemporaneous objection, or a motion for rehearing, or a motion for relief from judgment under Florida Rule of Civil Procedure 1.540, could ever be reviewed as fundamental. Just as the availability of those remedies has no bearing on whether a particular error is fundamental, neither does rule 3.800(b) eliminate the possibility that a sentence could be fundamental error.
In Maddox, the Fifth District contended that the supreme court did away with fundamental error in sentencing when it amended Florida Rule of Appellate Procedure 9.140, governing appeals in criminal cases. The amendments, effective January 1, 1997, included the following new subsection:
(d) Sentencing Errors. A sentencing error may not be raised on appeal unless the alleged error has first been brought to the attention of the lower tribunal:
(1) at the time of sentencing; or
(2) by motion pursuant to Florida Rule of Criminal Procedure 3.800(b).
Fla. R.App. P. 9.140(d).
Although the preclusive language of that subsection might support an inference that the supreme court meant to prohibit review of sentences under the fundamental error doctrine, we believe such an inference is unwarranted for several reasons. First, appellate review of fundamental error is, by its nature, an exception to the requirement of preservation. Indeed, it is only in this context that the concept has meaning. Put another way: no rule of preservation can impliedly abrogate the fundamental error doctrine because the doctrine is an exception to every such rule. It makes no difference that this particular rule is codified. Over the years, Florida's appellate courts have applied the preservation requirement regardless of whether the codified rules expressly imposed it, and they have corrected fundamental error regardless of whether the codified rules expressly permitted it.[7]
The latter fact underscores the importance of the fundamental error doctrine. Its purpose extends beyond the interests of a particular aggrieved party; it protects the interests of justice itself. It embodies the courts' recognition that some errors are of such a magnitude that failure to correct them would undermine the integrity of our system of justice. See Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580, 584 (Fla. 2d DCA 1996) (explaining that doctrine functions to preserve the public's confidence in the judicial system). As such, the correction of fundamental error is not merely a judicial power; it is an unrenunciable judicial duty. See In re Alkire's Estate, 142 Fla. 862, 144 Fla. 606, 198 So. 475, 482 (1940) (holding that judicial power vested by constitution cannot be abdicated in whole or part by the courts). Given that the authors of the Act expressly embraced this critically important safeguard, we do not believe that the supreme court simply would discard it by implication. Indeed, the supreme court's comment on the 1996 amendments to rule 9.140 implies otherwise. In its opinion adopting the amendments, the court stated that "[r]ule 9.140 was substantially rewritten so as to harmonize with the Criminal Appeal Reform Act of 1996 (CS/HB 211)." Amendments, 696 So.2d at 1137 (emphasis added). That statement contradicts the notion that the rule amendments were meant to eliminate jurisdiction that the Act retained.
On the other hand, while the Act did not disturb our jurisdiction to correct fundamental errors, it did limit our jurisdiction to correct nonfundamental errors. Before the *303 enactment of section 924.051(3), Florida's courts routinely reviewed another category of error in criminal appeals: unpreserved, purely legal sentencing errors that were apparent on the face of the record. In those instances, preservation by contemporaneous objection was excused because the purpose of the contemporaneous objection rule was not served. See, e.g., State v. Rhoden, 448 So.2d 1013 (Fla.1984); State v. Montague, 682 So.2d 1085, 1088 (Fla.1996) (and cases cited therein). Consequently, those errors were reviewed regardless of whether they were fundamental, and so included a variety of comparatively less serious sentencing errors such as unauthorized costs and improper probation conditions. The enactment of the Criminal Appeal Reform Act makes it clear that such nonfundamental errors can serve as bases for appellate jurisdiction only if they are preserved. See Nelson, 23 Fla. L. Weekly D2241, 719 So.2d 1230 (holding that under the Act, unpreserved sentencing errors no longer are correctable on direct appeal merely because they are apparent from face of the record).
Rule 9.140(d) implements that restriction on our jurisdiction while acknowledging that rule 3.800(b) furnishes a mechanism for preserving such errors for appeal. See Amendments to Florida Rule of Appellate Procedure 9.020(g) and Florida Rule of Criminal Procedure 3.800, 675 So.2d 1374, 1375 (Fla. 1996) (noting that rule 3.800(b) provides "a vehicle to correct sentencing errors in the trial court and to preserve the issue should the motion be denied."). Rules 3.800(b) and 9.140(d) are directed to the "preserved error" prong of appellate jurisdiction under the Act. They do not affect, let alone impliedly revoke, appellate jurisdiction to correct fundamental error in sentencing.

The Effect of a Guilty Plea
As earlier noted, the Criminal Appeal Reform Act imposes two restrictions on our jurisdiction. The second potential jurisdictional impediment to Bain's appeal stems from the fact that his sentences were imposed following guilty pleas. Section 924.051(4), provides:
If a defendant pleads nolo contendere without expressly reserving the right to appeal a legally dispositive issue, or if a defendant pleads guilty without expressly reserving the right to appeal a legally dispositive issue, the defendant may not appeal the judgment or sentence.
When amending the appellate rules to harmonize with the Act, the supreme court held that this provision is constitutional only if it is read to conform to Robinson v. State, 373 So.2d 898 (Fla.1979). See Amendments, 696 So.2d at 1105. In Robinson, the court addressed the validity of a similar statute. It held that the statute properly foreclosed appeals from matters which took place before the defendant agreed to the judgment of conviction, but it could not preclude appeals of a limited class of issues that arose contemporaneously with entry of the plea. These included: (1) subject matter jurisdiction; (2) illegality of the sentence; (3) failure of the government to abide by a plea agreement; and (4) the voluntary intelligent character of the plea. See Robinson, 373 So.2d at 902.
Similarly, in addressing section 924.051(4), the supreme court held that "the principle of Robinson controls. A defendant must have the right to appeal that limited class of issues described in Robinson." Amendments, 696 So.2d at 1105. Accordingly, the court devised Florida Rule of Criminal Procedure 3.172(l), which authorizes a motion to withdraw a plea within thirty days after rendition of the sentence, on the grounds recognized by Robinson or otherwise provided by law. The court also amended Florida Rule of Appellate Procedure 9.140(b)(2) to provide that a defendant who pleads guilty or nolo contendere may expressly reserve the right to appeal a prior dispositive order, and
(B) [] may otherwise directly appeal only
(i) the lower tribunal's lack of subject matter jurisdiction;
(ii) a violation of the plea agreement, if preserved by a motion to withdraw plea;
(iii) an involuntary plea, if preserved by a motion to withdraw plea;
(iv) a sentencing error, if preserved; or
(v) as otherwise provided by law.
In Maddox, the Fifth District cited this rule as additional evidence that the supreme court has abrogated the concept of fundamental *304 error in the sentencing realm. See Maddox, 708 So.2d at 619-620. The Fourth District, in Harriel, acknowledged that under rule 9.140(b)(2), a sentencing error may not be appealed unless it has been preserved by contemporaneous objection or by motion to correct the sentence under rule 3.800(b). But it disagreed with Maddox "to the extent that it holds that a sentence which exceeds the statutory maximum is not a fundamental error which can be addressed on direct appeal without necessity of preservation." Harriel, 710 So.2d at 104. It is apparent that the Harriel court declined to infer from the rule an intention to altogether exclude sentencing from the operation of the fundamental error doctrine.
For the reasons previously described, we agree with Harriel that rule 9.140(b)(2) does not prohibit our review of unpreserved fundamental sentencing errors. Again, the preservation requirements of rule 9.140(b)(2), like rule 9.140(d), are directed to the preserved error aspect of our two-fold jurisdiction under the Act. They do not affect our jurisdiction under the fundamental error prong.
To recapitulate, under the Criminal Appeal Reform Act our jurisdiction to review a sentence may be founded on an allegation either of a preserved sentencing error or of an unpreserved fundamental sentencing error. Also, if our jurisdiction is properly invoked by the allegation of any preserved or fundamental error, we have discretion to correct unpreserved nonfundamental sentencing errors that rise to the level of serious, patent errors. See Denson. To the extent that our statements here and in Denson regarding our authority to correct unpreserved serious, patent sentencing errors conflict with Chojnowski v. State, 705 So.2d 915 (Fla. 2d DCA 1997), we recede from Chojnowski.[8]

WHAT CONSTITUTES FUNDAMENTAL SENTENCING ERROR
When enacting section 924.051, the legislature did not undertake to define "fundamental error." Rather, the lawmakers left to the courts the task of mapping the parameters of the concept. Certainly, they knew that the judiciary has endeavored to be circumspect in its application of the fundamental error doctrine. And, just as certainly, the legislature was aware that the courts have struggled to define the concept in a way that is both sufficiently comprehensive and sufficiently exclusive.
In part, this is because each judicial error has two facets, and we have varying degrees of concern for either of them. The first aspect of an error is, of course, that a rule has been broken. When assessing whether a particular error is fundamental, we hold some rules, such as due process of law, in higher regard than others, such as the rules of evidence. The other characteristic of an error is its consequence, which can be nominal or can be so harmful that it offends our notions of fundamental fairness. To complicate matters further, our assessment of either aspect of an error can be either qualitative or quantitative. For example, although a single evidentiary error is less likely to be deemed fundamental than a single due process violation, in a given case a pervasive series of evidentiary errors might well produce a fundamentally erroneous result.
For these reasons, we credit the legislature for recognizing that a definition of fundamental error that emphasized concern for one aspect of judicial error over the other would be dangerous. It could produce seemingly anomalous results, which themselves might undermine public confidence in the judicial system. Consider, for example, Dodson v. State, 710 So.2d 159 (Fla. 1st DCA 1998), in which the First District noted that since the enactment of section 924.051 it had been following supreme court precedent and reversing, as fundamental error, public defender liens imposed without notice or hearing, but it had been declining to review other unpreserved errors that resulted in lengthier prison terms. The court observed: "We fail to see how the wrongful imposition of a *305 nominal discretionary attorney's fee lien can be deemed any more fundamental than wrongful incarceration." 710 So.2d at 161.
In Denson we bemoaned the judiciary's inability to define fundamental error in a manner that is predictive rather than descriptive. See Denson, 711 So.2d at 1229. Dodson illustrates why attempting such a definition would be folly. At best, we can identify a type of sentencing error that we do not hesitate to correct as fundamental. Beyond that, we can only point to some factors that we consider relevant to whether a particular sentencing error is fundamental.
As do the First, Third, and Fourth Districts, we consider illegal sentences to be fundamentally erroneous. Indeed, an illegal sentence epitomizes error that, if left uncorrected, could undermine public confidence in our system of justice. An institution charged with the duty to punish illegal conduct must not itself be seen to engage in illegality. When we discover that we have done so, we must undo our transgression regardless of when or how it was uncovered. See Sanders v. State, 698 So.2d 377, 378 (Fla. 1st DCA 1997) (explaining that illegal sentences are regarded with disdain by the law); Hayes v. State, 598 So.2d 135, 138 (Fla. 5th DCA 1992) (stating that when an illegal sentence is discovered, the system should willingly remedy it) (cited with approval in State v. Montague, 682 So.2d 1085, 1089 n. 6 (Fla.1996)).
We emphasize that our use of the adjective "illegal" in this context is not confined to a sentence that exceeds the statutory maximum sentence for the crime, as the term was employed in Davis v. State, 661 So.2d 1193, 1196 (Fla.1995). In State v. Mancino, 714 So.2d 429 (Fla.1998), the supreme court disavowed the notion that under Davis only sentences that exceed statutory maximums are illegal for purposes of rule 3.800(a). Rather, the court held, "[a] sentence that patently fails to comport with statutory or constitutional limitations is by definition `illegal.'" 714 So.2d at 433. We believe that any sentence to which our judiciary is constrained to attach the opprobrium "illegal" must be corrected as fundamental error.
That said, we cannot declare that only "illegal" sentences can constitute fundamental sentencing error. We cannot predict that no other sentence could involve an error so egregious as to demand correction for the sake of protecting the integrity of our system of justice. Still, we safely can observe that the less concern we have about a particular kind of error as a qualitative matter, the greater must be its quantitative impact before we would feel compelled to correct it as fundamental. Our societal values are such that in the sentencing context we are more solicitous of personal liberty than of pecuniary interests. Thus, an error that improperly extends the defendant's incarceration or supervision likely would impress us as fundamental. But only in an extreme case would an improper cost assessment or public defender's lien qualify as fundamental error. See Gaines v. State, 23 Fla. L. Weekly D2645, 724 So.2d 139 (Fla. 2d DCA 1998) (holding that improper imposition of public defender lien is neither fundamental nor serious, patent sentencing error).

BAIN'S SENTENCES
Bain pleaded guilty to robbery without a weapon, a second degree felony. See § 812.13(2)(c), Fla. Stat. (1995). For this offense, he received a fifteen-year minimum mandatory sentence as a habitual violent felony offender. This was error, because under the habitual violent felony offender statute the minimum mandatory portion of a sentence for a second degree felony cannot exceed ten years. See § 775.084(4)(b)2., Fla. Stat. (1995). Because the minimum mandatory portion of Bain's sentence exceeds the maximum allowed by law, it is illegal and constitutes fundamental error. Cf. Powell v. State, 719 So.2d 963, 23 Fla. L. Weekly D2310 (Fla. 4th DCA 1998) (holding that improper imposition of minimum mandatory sentence is reviewable as fundamental error because of inherent potential to lengthen defendant's incarceration). Therefore, we have jurisdiction, and we reverse and remand for resentencing on the robbery conviction. See § 924.015(3), Fla. Stat. (Supp.1996).
For the grand theft offense, the circuit court sentenced Bain to a concurrent term of ten years' imprisonment as a habitual *306 felony offender. This, too, was error. Bain stipulated that he qualified as a habitual violent felony offender. But he did not agree that he could be sentenced as a habitual felony offender, and the State did not present the required evidence of two prior felonies that would have qualified him for that treatment for his grand theft conviction. See § 775.084(1)(a)1., Fla. Stat. (1995).
Having acquired jurisdiction based on the fundamentally erroneous sentence for Bain's robbery offense, we need not determine whether the grand theft sentencing error is fundamental because it is at least a serious, patent sentencing error. See Denson. Accordingly, we reverse the habitual offender sentence imposed for Bain's conviction for grand theft, and remand for resentencing. Because Bain failed to object to the habitual offender sentence, on remand we permit the State to again attempt to qualify him as a habitual felony offender. See Lowenthal v. State, 699 So.2d 319 (Fla. 2d DCA 1997).
We certify that this decision presents the following questions of great public importance:
1. IS THE CRIMINAL APPEAL REFORM ACT OF 1996, SECTION 924.051, FLORIDA STATUTES (SUPP.1996), AN ATTEMPT TO AFFECT THE JURISDICTION OF APPELLATE COURTS TO ENTERTAIN APPEALS IN CRIMINAL CASES?
2. IF SO, IS THE ACT A VALID EXERCISE OF LEGISLATIVE AUTHORITY IN LIGHT OF THE FOLLOWING PROVISIONS OF THE FLORIDA CONSTITUTION: ARTICLE I, SECTION 21 (ACCESS TO THE COURTS), ARTICLE II, SECTION 3 (SEPARATION OF POWERS), AND ARTICLE V, SECTION 4(b)(1) (APPEALS FROM FINAL ORDERS MAY BE TAKEN AS A MATTER OF RIGHT)?
CAMPBELL, PATTERSON, BLUE, FULMER, WHATLEY, GREEN, CASANUEVA, and SALCINES, J.J., Concur.
ALTENBERND, J., Dissents with opinion in which PARKER, C.J., and THREADGILL, J., Concur.
ALTENBERND, Judge, Dissenting.
In its simplest terms, the troublesome issue in this case is whether an illegal sentence is "fundamental error" for purposes of the Criminal Appeal Reform Act. I conclude that it is not.
I agree that the certified questions are important and need to be resolved.[9] Nevertheless, I would reluctantly dismiss this appeal. The legislature's imprudent invasion into judicial territory in the Criminal Appeal Reform Act, while constitutionally questionable, is not the controlling issue here. The supreme court has created rules of procedure that require Mr. Bain to address these unpreserved sentencing issues in the trial court. At all times during the pendency of this appeal, Mr. Bain has had an available remedy in the trial court that should have been pursued prior to invoking this court's jurisdiction. As a matter of due process, I would hold that Mr. Bain is entitled to counsel to pursue his rights under Florida Rule of Criminal Procedure 3.800(a) when those rights replace his traditional right of appeal, and I would authorize his public defender to file the trial court motion to correct these problems. However, I would not declare these unpreserved errors to be fundamental in an appellate court when there exists an avenue of redress in the trial courts that is now, and always has been, available to Mr. Bain.

I. THE BASIC FACTS
On April 17, 1997, Mr. Bain pleaded either nolo contendere or guilty to six different informations, charging six separate offenses that had occurred on different dates.[10] Four *307 of these offenses are drug-related. For these offenses, Mr. Bain received concurrent 5-year sentences that apparently are guideline sentences.[11] He has not appealed these four cases. It is obvious from the sentencing transcript that these convictions and sentences were entered to clean up all of his pending less serious offenses in conjunction with his plea to the two more serious offenses.
Mr. Bain has appealed case number 96-17046 in which he was charged with the second-degree felony of robbery. He was convicted for that offense and sentenced to 15 years' imprisonment as a habitual violent felony offender. He received a 15-year minimum term. Although the 15-year term of imprisonment is proper, the minimum term cannot exceed 10 years. From the transcript of the sentencing hearing, it appears that both the assistant state attorney and the defense attorney thought this minimum term was applicable. Thus, the plea was negotiated based on a mutual mistake of law and no one ever suggested to the trial court that any problem existed with this sentence. Nevertheless, there is no question that the 15-year minimum term is unauthorized as a matter of law and that this legal error is not dependent upon any question of fact.
Mr. Bain also has appealed case number 96-16643 in which he was charged with robbery, but pleaded to the lesser offense of grand theft, as a third-degree felony. For this offense, he received a 10-year sentence of incarceration as a habitual offender. Mr. Bain made no effort to suggest that his record would not allow sentencing for this offense as a habitual offender. From a practical perspective, this sentence is probably insignificant because it is concurrent with the longer 15-year sentence.
The plea colloquy in this case is messy, but not unique. Mr. Bain, by his attorney's admission, is a man of limited intelligence. He was facing two separate robbery charges for which his total sentence could have been 60 years' imprisonment with a 20-year minimum mandatory. Presumably, his four guidelines sentences could have been added as an additional 5 years of imprisonment. When this plea negotiation reached its final stages, Mr. Bain was mostly concerned about gain time issues and whether a 15-year sentence would mean that he would actually spend 15 years in prison. Even with his limited intelligence, he seemed to know that the 15-year total sentence was a very favorable deal. He was not concerned about the 10-year sentence because it will have no practical ramifications so long as it is concurrent with the habitual violent felony offender sentence. It cannot be denied, however, that the written plea agreement does not describe the maximum sentence and is barely legible. The judge never even asked Mr. Bain to plead guilty or nolo contendere, but accepted a rather free-flowing plea agreement.
I am not certain whether Mr. Bain must withdraw his plea to receive a benefit from the majority's opinion. If he must withdraw his plea, he risks the possibility that the grand theft conviction will once again become a charge of robbery subject to lengthy, consecutive habitual violent felony offender sentencing.

II. ALLEGING JURISDICTION UNDER THE CRIMINAL APPEAL REFORM ACT
When Mr. Bain's trial attorney filed this appeal, he alleged in his statement of judicial acts to be reviewed that Mr. Bain wished to challenge the denial of his motion to suppress. This pleading was filed in bad faith. The motion to suppress concerned a pretrial identification that was not dispositive. The trial court had clearly stated that the motion was not dispositive, and had explained at sentencing that this issue could not be appealed. The trial attorney's effort to reserve the right to appeal this issue was meaningless.
I point this out because section 924.051(3) requires an allegation of prejudicial error. Where does a defendant "allege' the necessary prejudicial error, which is either preserved or fundamental, to invoke the court's jurisdiction? Typically, an allegation to invoke *308 a court's jurisdiction is filed at or near the inception of the legal proceeding.[12] The supreme court has not amended the appellate rules of procedure to require allegations of error in notices of criminal appeal.[13] Currently, an appellant in a criminal appeal must file a "statement of the judicial acts to be reviewed" in any criminal case in which a publicly funded transcript is required. Fla. R.Crim. P. 9.140(b)(5)(A)(ii). This document is filed in the great majority of such criminal appeals within a few days of the notice of appeal. See Fla. R.App. P. 9.140(e)(2)(A). Absent any other current procedural device for alleging the error necessary to invoke our jurisdiction, I am inclined to rely upon this statement to establish jurisdiction. When such a document has not been filed and we have reason to question our jurisdiction after reviewing the issues raised in the initial brief, we could issue an order to show cause to provide the appellant an opportunity to file a jurisdictional "allegation" prior to deciding whether to dismiss the appeal.
In this case, I would accept Mr. Bain's statement of judicial acts as an allegation giving us jurisdiction if it were not a bad faith allegation. If I concluded we had jurisdiction, I might be willing to correct the erroneous 15-year minimum mandatory designation under Denson v. State, 711 So.2d 1225 (Fla. 2d DCA 1998), but I would not treat the shorter concurrent habitual offender sentence as such an error on this record.

III. ILLEGAL SENTENCES ARE NO LONGER FUNDAMENTAL ERROR ON DIRECT APPEAL
Even in the face of the Criminal Appeal Reform Act, a defendant has the right to appeal certain sentencing issues. See Amendments to the Florida Rules of Appellate Procedure, 696 So.2d 1103 (Fla.1996). The question here is whether a defendant may appeal unpreserved sentencing errors that, at all relevant times, can be corrected by the filing of a motion in the trial court. With all due respect to Judge Northcutt's efforts and the viewpoint of the majority, and recognizing that their approach is more practical than that chosen by the legislature and the supreme court, I do not think we should employ the concept of fundamental error in an expansive manner in order to avoid the general rule requiring preserved error.
Without explaining its evolution in great detail, it seems to me that the Criminal Appeal Reform Act was enacted to address the problems created by unpreservable sentencing error. Prior to the Act, many errors that occurred during sentencing hearings, and especially in sentencing documents, simply could not be preserved by contemporaneous objection. As a result, appellate courts forgave defendants when these errors were raised on appeal without an objection in the trial court. Unfortunately, we often described these errors as "fundamental." I do not believe that the legislature intended the statutory word "fundamental" to include any and every sentencing error that an appellate court referred to as fundamental under the earlier rules of procedure.
No matter how one defines "fundamental error," at least when it is a jurisdictional concept, such errors should be serious and should necessitate action by the reviewing *309 court. The 15-year minimum mandatory designation in this case might be serious, but it is currently subject to repair in the trial court by means of a rule 3.800(a) motion. Although it would be very practical for this court to assume jurisdiction, there is no legal reason for this court to assert jurisdiction to correct an error currently correctable in the trial court. I am not certain that the habitual offender sentence is even erroneous, but if it is erroneous, it causes no practical harm and is currently subject to repair in the trial court.
Although this court clearly has authority to correct erroneous rulings by trial courts concerning illegal sentences, the supreme court has not expressly given it authority to correct such errors as fundamental errors. Instead, it has expressly prohibited parties from raising such issues unless they are preserved. See Fla. R.App. P. 9.140(d). When we have jurisdiction, I have no qualm with this court's power to correct an illegal sentence on its own authority. See Denson, 711 So.2d 1225. I hesitate, however, to invoke our jurisdiction, as an inherent power, to correct errors that remain correctable in the trial court.[14]

IV. PUBLIC DEFENDERS FOR POST-CONVICTION MOTIONS THAT SERVE AS CONDITIONS PRECEDENT TO DIRECT APPEAL OF SENTENCING ISSUES
The Criminal Appeal Reform Act and the related rule amendments were clearly intended to force the trial courts to clean up their own mess. The policy seems to be based on a belief that a trial judge who is inundated with postsentencing motions pursuant to rules 3.800(a) and (b), and a trial lawyer who is alleged to be ineffective in hundreds of motions pursuant to rule 3.850, claiming a failure to file rule 3.800(b) motions, will soon learn that it is better to handle sentencing with greater care. See Maddox v. State, 708 So.2d 617 (Fla. 5th DCA 1998). Although I dissent in this case, I agree with my colleagues that this policy risks harm to defendants and that it should be the job of this court to protect the rights of such defendants. If due process requires fair play, Mr. Bainwith an IQ of 80 cannot fairly be expected to file a pro se postconviction motion seeking a legal sentence merely to satisfy someone's concept of tidiness.
In light of the recent changes, a defendant clearly has the constitutional right to appointed counsel to file any necessary postsentencing motion pursuant to rule 3.800(b). Given that a motion pursuant to rule 3.800(a) is now a condition precedent to direct appellate review of any illegal sentence not preserved by a rule 3.800(b) motion, I would authorize the public defender to file this motion for Mr. Bain. I recognize that this solution has its limitations and that either the legislature or the supreme court could fashion a better approach, but this seems to be the best option available to this court if the legislature and the supreme court have eliminated both our jurisdiction and our prior standards of review concerning unpreserved sentencing errors. Thus, I would dismiss this appeal with instructions to the public defender to file a motion pursuant to rule 3.800(a), if that is in fact in Mr. Bain's best interests.
NOTES
[1] The ambiguity stems from the common interchangeability of the words which and that. As a matter of grammatic propriety, which generally is descriptive, while that tends to define. Fowler, Dictionary of Modern English Usage, 2d rev. ed.1983. Therefore, if the revisers of article V intended to describe all appeals from final orders as being rightful, they more properly would have written "appeals, which may be taken as a matter of right...." On the other hand, if instead the revisers intended their use of that to define the district courts' jurisdiction as extending only to those "appeals that may be taken as a matter of right," their use of commas to create the phrase following "appeals" was superfluous at best, and ambiguous at worst. Alas, the "rules" governing these things often are, perhaps usually are, dishonored in common practice. For that reason, the principle that legal documents should be construed according to the "rules" of grammar offers no insight into the intentions of either the revisers who proposed the language or the voters who approved it.
[2] Other examples of constitutional provisions granting authority to affect the jurisdiction of the courts include article V, section 2(a), in which the supreme court is directed to enact a rule establishing the jurisdictional time period for commencing an appeal, and article V, section 1, which directs the legislature to apportion the judicial power geographically by dividing the state into appellate court districts and judicial circuits. The legislature's authority to affect the jurisdiction of circuit courts is more wide ranging. Article V, section 5(b), provides that circuit courts shall have original jurisdiction not vested in the county courts, appellate jurisdiction as provided by general law, and the power of direct review of administrative action prescribed by general law. Legislative responsibility for establishing the parameters of county court jurisdiction is broader still. Under article V, section 6(b), county courts exercise the jurisdiction "prescribed by general law."
[3] For that matter, neither does the constitution appear to grant such authority to the supreme court, save for its duty under article V, section 2(a), to prescribe the time for commencing an appeal.
[4] "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."
[5] "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."
[6] Even before passage of the Act, the supreme court had lamented that "scarce resources were being unnecessarily expended in ... appeals relating to sentencing errors." See Amendments to the Florida Rules of Appellate Procedure, 696 So.2d 1103 (Fla.1996) (citation omitted).
[7] Before the codification of a preservation rule, the Florida Supreme Court enforced one. See Coker v. Hayes, 16 Fla. 368, 372 (1878). Later, in the day when litigants were statutorily obliged to reserve exceptions for appeal, based on objections made in the trial proceedings, Revised Statutes of Florida 1892, section 1266, the fundamental error rule applied even though the statutes did not provide for it. See, e.g., Parker v. Dekle, 46 Fla. 452, 35 So. 4 (1903). Today, aside from the provisions at issue here, neither the Florida Rules of Appellate Procedure nor the Florida Statutes contain a general requirement that errors be preserved for appeal, nor do they except fundamental errors from the preservation requirements.
[8] In Chojnowski v. State, 705 So.2d 915, 916 (Fla. 2d DCA 1997), we observed that as a result of the Criminal Appeal Reform Act, "a criminal defendant has only one avenue for correction of a nonfundamental sentencing error after the entry of a judgment and sentence. That avenue is the filing of a motion under rule 3.800(b)."
[9] We should, however, acknowledge that neither the public defender nor the State requested these certified questions. Indeed, the Office of the Attorney General, which proposed the Criminal Appeal Reform Act to the legislature, has suggested that we reverse the trial court in this case despite the preservation and jurisdictional issues.
[10] The relevant plea hearing was disjointed at best. One cannot determine from the written plea agreement or from the transcript whether Mr. Bain pleaded guilty or nolo contendere to these crimes.
[11] The guidelines scoresheet could not be located for inclusion in our record.
[12] This is comparable to the method by which a circuit court's subject matter jurisdiction in invoked. It is not essential that a case ultimately involve damages in excess of $15,000 in order for circuit court jurisdiction to exist; the plaintiff must simply allege such damages in good faith. See Tantillo v. Miliman, 87 So.2d 413, 415 (Fla. 1956); Floyd v. Baxter, 508 So.2d 549 (Fla. 1st DCA 1987).
[13] I am inclined to believe that some of the reform sought by the legislature could be accomplished if trial counsel in criminal cases were required to allege with some specificity in the notice of appeal the error sought to be reviewed on appeal. Cf. In re Florida Appellate Rules, 142 So.2d 725 (Fla.1962) (requiring assignments of error under the pre-1978 rules). Especially in appeals from guilty pleas and pleas of nolo contendere, this might allow appellate courts to dismiss non-meritorious appeals near their inception. See Counts v. State, 376 So.2d 59 (Fla. 2d DCA 1979). Such a rule would also force the trial counsel to consider appellate issues at the same time that he or she reviewed the sentencing documents to determine whether to file a motion pursuant to Florida Rule of Criminal Procedure 3.800(b). Obviously, this is a rule-making function for the supreme court and is not a function for either this court or the legislature. See Art. V, § 2(a), Fla. Const.
[14] At this point I must apologize to Chief Judge Schwartz, who must surely believe that I have run away and joined a Thomist monastery. See Mizell v. State, 716 So.2d 829 (Fla. 3d DCA 1998). Jurisdiction is simply not a power to be taken lightly.