DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**J.B.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-2634

[October 7, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael James Orlando, Judge; L.T. Case No. 19000708DLA.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Paul Patti, III, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

In our constitutional system, it is difficult to conceive of a more egregious violation of due process than convicting a defendant for conduct that does not constitute the charged crime. That is what occurred in this case when appellant was convicted in a juvenile proceeding of making a false report concerning the use of firearms in a violent manner. We conclude that the charged crime was not committed under the facts of this case and hold that the conviction amounted to fundamental error. We reverse the conviction and remand to the circuit court to enter a judgment of dismissal.

The state charged appellant with a second degree felony under section 790.163(1), Florida Statutes (2019), which reads, in pertinent part:

> It is unlawful for any person to make a false report, with intent to deceive, mislead, or otherwise misinform any person . . . concerning the use of firearms in a violent manner against a person or persons.

The state's case was based on the testimony of a behavioral technician (the "witness") who worked security at an alternative school that is part of the Broward County school system. The school educates students who are suspended from Broward County schools. The witness explained the dismissal procedure for students in the afternoon. When a student's bus number was called, the student was to come to the lobby and retrieve his or her property, such as a cell phone. After receiving the property, the student was required to go straight to the bus.

Appellant came to the lobby to get his property and the witness asked him if his bus had been called. Although appellant said "yes," the witness learned that appellant's bus had not been called, so he told appellant to leave the lobby. Appellant became verbally aggressive and told the witness that a security specialist had given him permission to get his property, a fact that the witness later confirmed.

The verbal sparring escalated and appellant told the witness, "F--- you . . . I'll shoot you and shoot up your house." The witness said he was shocked but not scared because he was frequently threatened by students.

A few days after the outburst, the witness reported the incident to the administration. He also said that appellant apologized to him and never followed through on his threat.

After the state rested, defense counsel moved for a judgment of dismissal. The circuit court found appellant guilty of violating section 790.163(1), adjudicated him delinquent and committed him to a nonresidential program.

In his initial brief, appellant argued that because the witness "did not feel threatened by the words at the time they were spoken by the child, there is no proof beyond a reasonable doubt that there was" a violation of section 790.163.

### Appellant's conduct was not a "false report" under section 790.163(1).

Defense counsel's motion for judgment of dismissal argued:

> Right now you have to look at this and take all the testimony you've heard from this witness and say: Did [appellant], on March 6th, unlawfully make a false report; to wit: Threaten to shoot a school board employee? He did not, based on

everything that you heard. He trash-talked that date, that afternoon to [the witness], who was working as an employee of the school board.

*** 

And that's what we have to go with. Because . . . that's what happened. . . . It wasn't as if someone has called up and said, "I have placed a bomb around the corner behind the school in a box that is going to blow everybody up." Okay. . . . That's not what was done. It was this give and take between two people. . . . It's not somebody calling up a school or pulling a false fire alarm, which is clearly false. This was under all the circumstances, under all the testimony you have heard, not a threat but trash-talk words. If that's the case, there's no offense.

Despite defense counsel's somewhat imprecise argument, we agree that appellant's statement – "I'll shoot you and shoot up your house" – was not a "false report" under section 790.163(1).

Although section 790.163(1) uses the word "report" as a noun within its internal phrase "make a false report," that phrase can be understood as meaning "falsely report," in other words, using "report" as a transitive verb. The Merriam-Webster dictionary defines "report," when used as a transitive verb, in several variations:

**1 a :** to give an account of : RELATE
   **b :** to describe as being in a specified state
      // *reported* him much improved
**2 a :** to serve as carrier of (a message)
   **b :** to relate the words or sense of (something said)
   **c :** to make a written record or summary of
   **d (1) :** to watch for and write about the newsworthy aspects or developments of : COVER
      **(2) :** to prepare or present an account of for broadcast
**3 a (1) :** to give a formal or official account or statement of
      // the treasurer *reported* a balance of ten dollars
      **(2) :** to return or present (a matter referred for consideration) with conclusions or recommendations
   **b :** to announce or relate as the result of investigation
      // *reported* no sign of disease
   **c :** to announce the presence, arrival, or sighting of
   **d :** to make known to the proper authorities

3

// *report* a fire

**e :** to make a charge of misconduct against.

https://www.merriam-webster.com/dictionary/report (last visited Sept. 10, 2020); *see also Allstate Ins. Co. v. Orthopedic Specialists,* 212 So. 3d 973, 976 (Fla. 2017) ("[W]e may consult references commonly relied upon to supply the accepted meanings of words.").

Of these variations, the definition of "report" which appears most applicable to section 790.163(1)'s contextual use of "false report" is "to make known to the proper authorities, [for example] '*report* a fire.'" *See State v. Lewars,* 259 So. 3d 793, 797 (Fla. 2018) ("To answer a question of statutory construction, courts must first look to the statute's language, considering its words in the context of the entire section rather than in isolation. If the statutory language is clear and unambiguous, the court must recognize the statute's plain meaning and, therefore, need not employ any other rules of statutory construction.") (internal citations omitted).

Applying that definition here, we conclude that appellant's statement to the school behavioral technician – "I'll shoot you and shoot up your house" – was not a "false report" under section 790.163(1). Appellant was not trying to "make known to the proper authorities," i.e., the school behavioral technician, that another person was going to "shoot you and shoot up your house." Instead, <u>appellant was conveying a threat</u> – the truth or falsity of which remained to be seen depending on what actions appellant took next, either in that moment or in the future. Section 790.163(1) is simply inapplicable to these facts.

We do not rely on *J.A.W. v. State,* 283 So. 3d 896 (Fla. 1st DCA 2019), to reach our conclusion that no crime occurred in this case, because that case's focus on "future-oriented threats" departs from section 790.163(1)'s plain language. *Id.* at 898.

### Preservation and Fundamental Error

Section 924.051(3), Florida Statutes (2019), provides, in pertinent part, that

> [a] judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.

The failure of the state's proven facts to constitute the charged crime was raised in the trial court by defense counsel's argument in support of the motion for judgment of dismissal. However, appellant's initial brief focused primarily on how the witness perceived and reacted to appellant's threat; the brief did not explicitly challenge the application of section 790.163 to the facts of the case.

An "issue not raised in an initial brief is deemed abandoned . . . ." *J.A.B. Enterprises v. Gibbons*, 596 So. 2d 1247, 1250 (Fla. 4th DCA 1992). We have long recognized the exception to this rule—that we "may *sua sponte* address fundamental error apparent on the face of the record." *J.V. v. State*, 221 So. 3d 689, 691 (Fla. 4th DCA 2017) (quoting *Honaker v. State*, 199 So. 3d 1068, 1070 (Fla. 5th DCA 2016)). By definition, a fundamental error is an error of such a magnitude that failure to correct it "would undermine the integrity of our system of justice." *Bain v. State*, 730 So. 2d 296, 302 (Fla. 2d DCA 1999).

Where the state's evidence does not establish that a charged crime has occurred, such a failure of proof constitutes fundamental error. *See F.B. v. State*, 852 So. 2d 226, 230 (Fla. 2003) (explaining that "a conviction imposed upon a crime totally unsupported by evidence constitutes fundamental error") (quoting *Troedel v. State*, 462 So. 2d 392, 399 (Fla. 1984)); *Griffin v. State*, 705 So. 2d 572, 574 (Fla. 4th DCA 1998) ("A conviction is fundamentally erroneous when the facts affirmatively proven by the State simply do not constitute the charged offense as a matter of law.").

We agree with Judge Makar's thorough survey of this area of the law, which establishes that an appellate court may address a fundamental error, even though the issue is not raised in the initial brief:

> Florida's appellate courts have long recognized judicial authority—and a "unrenunciable" duty—to correct fundamental errors, meaning those of such gravity that ignoring and not correcting them would diminish public respect for the judicial process, even if those errors were not preserved at trial, not raised on appeal in the briefing process, or raised by the appellate court on its own. *See, e.g., Bell v. State*, 289 So. 2d 388, 391 (Fla. 1973) ("It is the long standing rule of this Court that when assignments of error are not argued in the briefs they will be deemed abandoned *unless* jurisdictional or *fundamental error appears in the record.*") (emphasis added); *Hendricks v. State,* 34 So.

5

3d 819, 828 (Fla. 1st DCA 2010) ("Despite Appellant's failure to argue fundamental error, we consider whether the purported error is of a fundamental nature because it is an appellate court's 'unrenunciable judicial duty' to correct fundamental error even if it is not raised.") (citation omitted); *I.A. v. H.H.,* 710 So. 2d 162, 165 (Fla. 2d DCA 1998) ("Although positions that are not presented to the trial court or argued on appeal generally are waived, *it is our duty to notice and correct jurisdictional defects or fundamental errors even when they have not been identified by the parties.*") (emphasis added); *Bain v. State,* 730 So. 2d 296, 302 (Fla. 2d DCA 1999) ("the correction of fundamental error is not merely a judicial power; it is an unrenunciable judicial duty."); *J.V. v. State,* 221 So. 3d 689, 691 (Fla. 4th DCA 2017) ("Although appellant does not raise this issue on appeal, we conclude that [pleading defect] amounts to fundamental error which can be addressed sua sponte."); *Honaker v. State,* 199 So. 3d 1068, 1070 (Fla. 5th DCA 2016) (appellate court "may sua sponte address fundamental error apparent on the face of the record"); *see also* § 924.051(3), Fla. Stat. (2019) ("A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court *or, if not properly preserved, would constitute fundamental error.*") (emphasis added). By its nature, "fundamental error is not subject to harmless error review." *Reed v. State,* 837 So. 2d 366, 369–70 (Fla. 2002).

*Rosier v. State,* 276 So. 3d 403, 418–19 (Fla. 1st DCA 2019) (Makar, J. dissenting); *see also* Fla. R. App. P. 9.140(i) ("In the interest of justice, the court may grant any relief to which any party is entitled.").

Judge Makar's approach is consistent with the plain language of section 924.051(3), which expressly authorizes an appellate court to reverse a conviction based on a determination that fundamental error occurred. Notably, under the statute, an appellate court's authority to correct fundamental error is not limited to situations where the error was raised in the initial brief.

Had appellant filed an *Anders*[1] brief instead of a deficient brief, our independent review of the record would have discovered the error in this case. In the *Anders* context, we would then have "allow[ed] both the

---

[1] *Anders v. California,* 386 U.S. 738 (1967).

appellant and the state to submit briefs on issues that [we] found in [our] independent review to be arguable on the merits." *State v. Causey*, 503 So. 2d 321, 323 (Fla. 1987). Where fundamental error is at issue, it defies all notion of fairness to elevate procedure over justice and send this juvenile, without an attorney, to pursue the remedy of ineffective assistance of appellate counsel.

Appellant's conduct did not constitute the crime charged. Turning a blind eye to this fundamental error would undermine the public's confidence in our system of justice. We therefore reverse the conviction and remand to the circuit court for the entry of a judgment of dismissal.

*Reversed.*

WARNER and GROSS JJ., concur.
GERBER, J., concurs in part with opinion.

GERBER, J., *concurring in part.*

I concur with the majority's ultimate decision that appellant was wrongly convicted of violating section 790.163(1), Florida Statutes (2019). Applying the dictionary definition of "report" which appears most applicable to section 790.163(1)'s contextual use of "false report" – "to make known to the proper authorities, [for example] *'report* a fire'" – appellant's statement to the school behavioral technician, "I'll shoot you and shoot up your house," was not a "false report" under section 790.163(1).

However, the fact that section 790.163(1) is inapplicable here does not mean appellant did not commit a crime in yelling at the school behavior technician, "I'll shoot you and shoot up your house." Appellant ***did commit a crime*** – corruption by threat against public servant, in violation of section 838.021, Florida Statutes (2019), which reads, in pertinent part:

> (1) It is unlawful to harm *or threaten to harm* any public servant, his or her immediate family, or any other person with whose welfare the public servant is interested with the intent to:
>
> (a) Influence the performance of any act or omission that the person believes to be, or that the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.

7

....

[(3)](b)   Whoever threatens unlawful harm to any public servant or to any other person with whose welfare the public servant is interested shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 838.021, Fla. Stat. (2019). *See also J.G. v. State,* 915 So. 2d 274, 275-76 (Fla. 4th DCA 2005) (affirming denial of juvenile's motion for dismissal of corruption by threat charge under section 838.021, where the juvenile had argued the state failed to prove his threatening statements to kill a school employee were made with the intention of influencing a public servant's performance; the juvenile made the statements in an angry and loud voice in a school suspension room where fifteen to twenty other students and a supervisor were present; and when confronted about the statement, the juvenile replied, "I meant what I said," supporting the inference that the juvenile intended the statements not as private communications, but with the intent that the employee be informed of his statements).

Why the state mischarged this crime under section 790.163(1) instead of section 838.021 is a mystery to me. But because section 790.163(1) is inapplicable to appellant's statement here, we are compelled to reverse for entry of an order granting appellant's judgment of dismissal on the crime as charged under section 790.163(1).

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

8