# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-2327
_____

ROGER N. ROSIER,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Wakulla County.
Dawn Caloca-Johnson, Judge.

June 28, 2019

ON MOTION FOR REHEARING, REHEARING EN BANC, AND
CLARIFICATION

ROWE, J.

Roger N. Rosier's judgment and sentence were reversed by a panel of this Court on grounds that the competency hearing conducted by the trial court was legally inadequate. *See Rosier v. State*, 43 Fla. L. Weekly D2042 (Fla. 1st DCA Sept. 5, 2018). The

State moved for rehearing, rehearing en banc, and clarification, asserting that the Court sua sponte decided an issue not argued by Rosier. We grant the motion, withdraw the panel opinion, and substitute the following in its place.

*I.*

Rosier appeals his conviction and sentence for resisting an officer with violence. He argues that the trial court erred by: (1) imposing a discretionary fine and surcharge without orally pronouncing them, and (2) failing to conduct a competency hearing.

We agree that the trial court erred when it imposed the discretionary fine and surcharge under section 775.083, Florida Statutes, without orally pronouncing them at sentencing. Thus, the fine and surcharge must be stricken. We affirm Rosier's judgment and sentence in all other respects.

Rosier made only one argument related to competency in his initial brief—that the trial court erred as a matter of law by failing to conduct a competency hearing. Rosier's specific argument was:

> Mr. Rosier was committed to the Florida State Hospital after the trial court found that he was incompetent to proceed on October 7, 2013. After receiving a report recommending a finding of competency, the trial court scheduled the hearing required by Florida Rule of Criminal Procedure 3.212(c) for July 9, 2014; however, the required hearing never occurred. Subsequently, on August 14, 2014, a different circuit court judge entered an order finding that Mr. Rosier was competent. The controlling rules and case law cited above provide that a competency hearing is required in this context. The trial court erred as a matter of law by adjudging Mr. Rosier— who had previously been adjudged incompetent— competent without first holding a hearing.

Weeks after the initial brief was filed, the State sought and was granted leave to supplement the record with the transcript of the competency hearing conducted on August 14, 2014. After being

2

served with a transcript contradicting his claim that no competency hearing occurred, Rosier did not seek to amend the initial brief to clarify or supplement his arguments on appeal.

The State then filed an answer brief, arguing that the transcript of the competency hearing, the expert's report, and the trial court's order refuted Rosier's argument that the trial court failed to conduct a competency hearing. The State contended that the record showed,

> the trial court made an independent determination that Rosier was competent and fully complied with the requirements expressed in *Dougherty v. State*, 149 So. 3d 672 (Fla. 2014), and *Merriell v. State*, 169 So. 3d 1287 (Fla. 1st DCA 2015)[,] by holding a hearing, making an independent determination that Appellant was competent to proceed, and entering a written order.

Rosier did not respond to the State's arguments. Rather than file a reply brief, he filed a "Notice that Appellant Will Not File a Reply Brief."

After briefing, this Court delivered an opinion reversing Rosier's judgment and sentence. The panel majority cast Rosier's argument on appeal as one "challeng[ing] the adequacy of the hearing at which it was determined that his competency had been restored." *Rosier*, 43 Fla. L. Weekly at D2042. Holding that the competency hearing was inadequate, the majority reversed and remanded for the trial court to make a *nunc pro tunc* evaluation of Rosier's competency.

## II.

On rehearing, the State points out that the only argument presented in Rosier's initial brief was that the trial court entered an order finding Rosier competent to proceed without conducting a competency hearing. The State argues that Rosier did not challenge the adequacy of the hearing. Thus, the issue was waived, and the panel majority erred by sua sponte raising and deciding the issue. In his response to the rehearing motion, Rosier acknowledged that he failed to raise the adequacy of the hearing

in the initial brief but argued that the issue was properly before the Court because the State raised it in the answer brief, and Rosier's initial-brief argument—that the trial court failed to hold a competency hearing—necessarily included an argument that the hearing was inadequate. We disagree and hold that Rosier waived any argument on the adequacy of the competency hearing when he failed to raise the issue in the initial brief.

An appellate court is "not at liberty to address issues that were not raised by the parties." *Anheuser-Busch Co., Inc. v. Staples*, 125 So. 3d 309, 312 (Fla. 1st DCA 2013). Nor may an appellate court "depart from its dispassionate role and become an advocate by second guessing counsel and advancing for him theories and defenses which counsel either intentionally or unintentionally has chosen not to mention." *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983) (on motion for rehearing); *see also D.H. v. Adept Cmty. Servs., Inc.*, 43 Fla. L. Weekly S533, S539 (Fla. Nov. 1, 2018) (Canady, C.J., dissenting) ("[I]t is not the role of the appellate court to act as standby counsel for the parties."). Instead, an appellate court must confine its decision to the issues raised in the briefs. *See Bainter v. League of Women Voters of Fla.*, 150 So. 3d 1115, 1126 (Fla. 2014) ("Basic principles of due process"—to say nothing of professionalism and a long appellate tradition—"suggest that courts should not consider issues raised for the first time at oral argument" and "ought not consider arguments outside the scope of the briefing process.") (quoting *Powell v. State*, 120 So. 3d 577, 591 (Fla. 1st DCA 2013))); *Redditt v. State,* 84 So. 2d 317, 320 (1955) ("The function of an assignment of error is to point [to] the specific error claimed to have been committed by the court below, in order that the reviewing court and opposing counsel may see on what point the appellant seeks reversal and to limit argument and review to such point."); *T.M.H. v. D.M.T.*, 79 So. 3d 787, 827 (Fla. 5th DCA 2011) (Lawson, J., dissenting) ("Judicial restraint serves as the essential self-imposed 'check' against the judicial branch's abuse of power. . . ."). For an appellant to raise an issue properly on appeal, he must raise it in the initial brief. Otherwise, issues

4

not raised in the initial brief are considered waived or abandoned.[1] *See Hall v. State,* 823 So. 2d 757, 763 (Fla. 2002) (finding procedurally barred argument made in appellant's reply brief that was not raised in the initial brief), *abrogated on other grounds by Norvil v. State*, 191 So. 3d 406 (Fla. 2016); *City of Miami v. Steckloff*, 111 So. 2d 446, 447 (Fla. 1959) ("An assigned error will be deemed to have been abandoned when it is completely omitted from the briefs."); *J.A.B. Enter. v. Gibbons*, 596 So. 2d 1247, 1250 (Fla. 4th DCA 1992) ("[A]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief."); Philip J. Padovano, Waiver, 2 Fla. Prac., App. Practice § 8:10 (2017 ed.) ("Failure to pursue the argument on appeal or review is a waiver of the point.").

These fundamental principles of appellate review and judicial restraint apply even when the defendant has been convicted of a capital crime and sentenced to death. *See Hoskins v. State*, 75 So. 3d 250, 257 (Fla. 2011) (declining to address a claim of ineffective assistance of counsel because appellant raised the claim for the first time in the reply brief); *Simmons v. State*, 934 So. 2d 1100, 1117 n.14 (Fla. 2006) (declining to reach on direct appeal "any arguments not expressly included in Simmons' brief to this Court"); *Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (finding waived on direct appeal a claim of improper admission of the defendant's statements made during a taped interview because the

---

[1] The dissenting judges argue that the scope of appellate review is not so limited, citing language in *D.H.,* and other decisions that indicate that, even if not raised on appeal, a reviewing court may review the record for "obvious fundamental error" or jurisdictional defects. *But see Kirkman v. State*, 233 So. 3d 456, 465 (Fla. 2018) (declining to consider argument where appellant failed to preserve the argument in the trial court and presented "no argument for fundamental error on appeal"). Because there is no jurisdictional defect or fundamental error in this case, we need not address the purely academic question raised by the dissents, i.e., whether an appellate court must act as standby appellate counsel and scour the record in each case for fundamental error.

defendant failed to brief fully and argue the issue); *Johnson v. State*, 660 So. 2d 637, 645 (Fla. 1995) (reiterating on direct appeal that "[t]he law is well settled that failure to raise an available issue constitutes an admission that no error occurred"); *Duest v. Dugger*, 555 So. 2d 849, 851-52 (Fla. 1990) (finding waived in a postconviction appeal any claims not fully argued in the appellant's initial brief).

Applying these principles here, we find Rosier waived any argument that the competency hearing was inadequate. *Williams v. State*, 932 So. 2d 1233, 1237 (Fla. 1st DCA 2006) (defining waiver as the "voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right"). In his initial brief, Rosier argued only that the trial court failed to hold a competency hearing. Now on rehearing, he argues, for the first time, that the hearing was inadequate. Because Rosier did not challenge the adequacy of the competency hearing in his initial brief, he may not raise it now on rehearing. *Coolen*, 696 So. 2d at 742 n.2; *Anheuser-Busch*, 125 So. 3d at 312.

Rosier offers two reasons why his failure to brief the adequacy of the hearing does not bar this Court from reviewing the issue. First, he asserts that the issue was properly before the Court because the State implicitly raised the issue in the answer brief by arguing that the trial court made an independent determination of Rosier's competency. Second, Rosier argues that "[a] finding of competency following an inadequate hearing is essentially the same error as a finding of competency following no hearing at all."

We reject both arguments. First, the State's arguments in the answer brief assigned no new error for this Court to review. Even after Rosier received the supplemental record refuting his only argument on competency, Rosier did not seek leave to file an amended brief. *See In re J.W.*, 210 So. 3d 147, 152 (Fla. 2d DCA 2016) (holding that appellant waived issue not argued in her initial brief after she was put on notice of the issue in the answer brief and "did not move for leave to file an amended brief to address the point"); *Bilotti v. State*, 27 So. 3d 798, 800 (Fla. 2d DCA 2010) (holding that appellant waived issue because he did not raise it in

6

the initial brief, seek leave to file a supplemental brief, or reply to the State's answer brief).

Second, Rosier's initial argument challenging the trial court's failure to hold a competency hearing was insufficient to preserve his argument on rehearing challenging the adequacy of the hearing. *I.R.C. v. State*, 968 So. 2d 583, 588 (Fla. 2d DCA 2007) (recognizing that an appellate court may "ordinarily reverse only on the basis of the specific arguments presented by the appellant"). Even when confronted with the transcript of the hearing, Rosier did not file a reply brief to respond to the arguments in the answer brief and to clarify the argument made in his initial brief. We decline the invitation to expand Rosier's lack-of-hearing argument to incorporate his newly articulated inadequate-hearing argument. *See Fitchner v. Lifesouth Cmty. Blood Ctrs., Inc.*, 88 So. 3d 269, 278 (Fla. 1st DCA 2012) (explaining that Florida Rule of Appellate Procedure 9.330(a) expressly prohibits consideration of issues raised for the first time in a motion for rehearing).

*III.*

We thus confine our review to the argument Rosier raised in the initial brief—whether the trial court failed to conduct a competency hearing. Had there been such a failure here, precedent from this Court would indeed support reversal. *See Pearce v. State*, 250 So. 3d 791, 792-93 (Fla. 1st DCA 2018); *Robinson v. State*, 250 So. 3d 777, 778-79 (Fla. 1st DCA 2018); *Francis v. State*, 248 So. 3d 263, 264-65 (Fla. 1st DCA 2018). But reversal is not required here because the record clearly shows that the trial court did conduct a hearing on Rosier's competency.

Rosier was committed to the Florida State Hospital after the trial court determined that he was incompetent to proceed on October 7, 2013. On June 27, 2014, the trial court received a copy of the confidential evaluation report from the experts at Florida State Hospital. The report found Rosier competent to proceed. The report also included discharge instructions suggesting that jail officials continue Rosier's medication regime while Rosier awaited trial. The case progress docket then reflects that a review hearing was scheduled for August 13, 2014, with Judge Caloca-Johnson presiding.

7

At the review hearing, defense counsel alerted the court that Rosier was returning from Florida State Hospital and that a competency hearing should be scheduled. Defense counsel asked that the hearing occur before the case was set for trial. When the prosecutor suggested resolving the issue that day, defense counsel stated that Rosier was not present and asked for the competency hearing to be set for the next day, August 14, 2014. The following discussion occurred:

> THE COURT: Yeah. So we've moved to[o] much around, in the last twenty-four hours.
>
> THE CLERK: How long is it going to take?
>
> THE COURT: How long is it going to take, two seconds?
>
> MS. JOHNSON: Judge, it won't - - it won't take more than - - more than thirty seconds.
>
> THE COURT: Okay.
>
> MS. JOHNSON: We're stipulating that he's competent.

The record reflects that the court reconvened the next day for a competency hearing.

At that hearing, defense counsel and Rosier stipulated to the expert report's findings that Rosier was competent to proceed. The trial court then conducted a colloquy of Rosier, during which the court learned that Rosier believed that he was doing "a lot better," that he was not taking any psychotropic medications, and that he believed he was okay. The trial court's written order, entered on the same day as the hearing, provided:

> THIS CAUSE having come before the Court on the report of Leslie Dellenbarger, Psy.D. Senior Psychologist, Florida State Hospital of June 19, 2014, that the Defendant is competent to proceed, and the Court being fully advised in the premises, it is hereby
>
> ORDERED AND ADJUDGED:

8

> 1. The Defendant is currently competent to proceed to trial.

These facts refute Rosier's argument that the trial court failed to hold a hearing before entering the order finding him competent to proceed. *See Merriell*, 169 So. 3d at 1288 (affirming a finding of competency made during a status hearing when the court specifically stated that it had read the competency evaluations and that it found the appellant competent to proceed). Because the record shows that the trial court conducted a hearing to determine competence, Rosier's sole argument on appeal fails. Apart from our reversal of his sentence to address the imposition of the fine and surcharge, Rosier's judgment and sentence is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

B.L. THOMAS, C.J., and LEWIS, ROBERTS, WETHERELL, RAY, OSTERHAUS, KELSEY, WINOKUR, JAY, and M.K. THOMAS, JJ., concur.

WOLF, J., concurs in result with opinion.

WINOKUR, J., concurs in an opinion joined by B.L. THOMAS, C.J.

M.K. THOMAS, J., concurs in an opinion joined by B.L. THOMAS, C.J., and KELSEY and JAY, JJ.

MAKAR, J., dissents in an opinion joined by BILBREY, J.

BILBREY, J., dissents in an opinion joined by MAKAR, J.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WOLF, J., concurring in result.

I concur in affirming the trial court's determination regarding competency. Any alleged error in this case was not sufficiently

egregious to warrant this court reversing on an issue not raised within appellant's brief.

If an error in this case, however, had been discovered by this court during its normal review process that affected the fundamental fairness of the criminal proceeding, we would be required to order supplemental briefing and address the error.[2] Not addressing an error that goes to the very fairness of a criminal proceeding is simply not an option. I fully agree with the thoughts expressed by Judge Cohen in his well-reasoned concurrence in *Berben v. State*, 44 Fla. L. Weekly D962, 963 (Fla. 5th DCA Apr. 12, 2019), where he stated:

> While the dissent correctly asserts that we have no duty to undertake a fundamental error analysis, we do, however, have a duty to ensure that justice is applied fairly and evenly. *E.g., Smith v. State*, 521 So. 2d 106, 108 (Fla. 1988) (explaining that fundamental error should apply "where the interests of justice present a compelling demand for its application" (citing *Ray v. State*, 403 So. 2d 956 (Fla. 1981)). It is also a well-established practice of this Court to remedy fundamental errors on the face of the record. *E.g., Honaker v. State*, 199 So. 3d 1068, 1070 (Fla. 5th DCA 2016); *Johnson v. State*, 574 So. 2d 222, 224 (Fla. 5th DCA 1991); *Goss v. State*, 398 So. 2d 998, 999 (Fla. 5th DCA 1981). I agree that a finding of reversible error that was neither preserved at the trial level nor argued on appeal should be a rare circumstance; this is that rare case. We cannot simply ignore the fundamental sentencing error under the guise of "judicial restraint."

(Footnote omitted).

---

[2] Where a defendant files an *Anders* brief, we are required to look for fundamental error by thoroughly examining the record and addressing issues not raised. *See Anders v. California*, 386 U.S. 738 (1967). In this case there is no such requirement, but we should not ignore egregious fundamental errors that are found in our normal review process.

The same can be said of non-sentencing errors that go to the very fairness of a criminal proceeding.

The majority acknowledges that because it finds no error, it is unnecessary to address whether an appellate court can decide an issue that affects the fundamental fairness of a criminal proceeding if it is unbriefed. I write specifically to point out that the holding of this case does not address that issue and to voice the view that a bright-line rule that prohibits us from ever addressing discovered fundamental unfairness is inconsistent with our system of justice.

WINOKUR, J., concurring.

The majority opinion acknowledges the rule that "an appellate court may consider an issue that has been waived or abandoned when the issue involves 'obvious fundamental errors' or the court's jurisdiction." Maj. op. at 5 n.1 (citing *D.H. v. Adept Cmty. Servs., Inc.,* 43 Fla. L. Weekly S533, S535 (Fla. Nov. 1, 2018)). However, the majority opinion avoids application of this rule by asserting that "the trial court [here] committed no fundamental error." Maj. op. at 5 n.1.

I do not dispute this conclusion. As such, we should not address the unraised issue, and the issue raised does not support reversal. This should end the inquiry, but other opinions in this case specifically address whether we have a duty to correct fundamental error that the appellant did not raise. On this matter, I believe a few additional points are worth mentioning.

*1. Chief Justice Canady's* D.H. *dissent*

First, I agree with Chief Justice Canady's position on unraised error, expressed in dissent in *D.H.*:

> Our precedent requires that an argument for reversal be specifically preserved in the trial court and then be specifically raised and briefed to the appellate court in order for that appellate court or a higher appellate court to consider it. Otherwise, the argument is

11

waived. General or vague references to an issue will not suffice. . . .

> This requirement of specific argument and briefing is one of the most important concepts of the appellate process. Indeed, it is not the role of the appellate court to act as standby counsel for the parties.[3] Moreover, it is only logical to require an argument to specifically be raised. Otherwise, the appellee "must not only respond to the specific reasons for reversal advanced by the [appellant] but also anticipate and respond to other reasons for reversal that may be advanced by the reviewing court." In the end, absent some exception to the waiver doctrine, an appellant who abandons an argument cannot benefit from that argument in the future.

*D.H.*, 43 Fla. L. Weekly at S539 (Canady, C.J., dissenting) (citations and footnote omitted). Exceptions to this elementary rule of appellate law should be rarely made.

## 2. *Nature of fundamental error*

Second, I emphasize a basic feature of fundamental error: the whole point of identifying an error as "fundamental" is to permit an appellant to argue that the error supports reversal even if the

---

[3] The importance of a court's duty to remain neutral and to refrain from making arguments for one side of a proceeding was discussed at length in the dissenting opinion of *Lee v. State*, 264 So. 3d 225, 231 (Fla. 1st DCA 2018) (Makar, J., dissenting). In *Lee*, the appellant argued that the trial judge improperly departed from his neutral position by taking actions that assisted the prosecution. No doubt the trial judge in *Lee* believed that the prosecution's perceived failures were causing impropriety in the proceedings, and that his disputed actions were necessary to promote justice. Yet the dissenting opinion forcefully contended that the trial judge's actions improperly assisted one side and constituted an abandonment of neutrality. I believe that assisting the appellant here by reversing the conviction on an issue he did not assert himself would have the same effect.

issue was never raised or properly preserved below. *See, e.g.*, *Insko v. State*, 969 So. 2d 992, 1001 (Fla. 2007) (noting that "to obtain appellate review of a claimed error . . ., a party must have preserved the error by timely objection," "unless fundamental error occurred"); *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003) (noting that only fundamental error "may be raised for the first time on appeal"); *Judge v. State*, 596 So. 2d 73, 79 n.3 (Fla. 2d DCA 1991) (holding, "[i]n its narrowest functional definition, 'fundamental error' describes an error that can be remedied on direct appeal, even though the appellant made no contemporaneous objection in the trial court . . ."). *See also* § 924.051(3), Fla. Stat. ("An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error.").[4]

But if we permit the reversal of a judgment based on unraised fundamental error, not only do we permit an appellant to raise an unpreserved error if it is fundamental, but we hold that the appellant *does not even have to raise the issue*, because the appellate court has an independent duty to reverse, even if the issue is unraised. I believe this rule radically and unnecessarily alters the very definition of fundamental error. "Fundamental error" would no longer mean "error so serious that a litigant can raise it on appeal even if unpreserved;" instead, it would mean "error so serious that an appellant does not even have to raise it on appeal and the court bears an obligation to discover and correct the error sua sponte." I see no compelling reason to transform the longstanding, well-accepted definition of fundamental error.

---

[4] To be clear, in no way do I suggest that "the lack of preservation precludes appellate review under a fundamental error exception," as Judge Makar contends. (Makar, J., dissenting at 37). Nor do I ignore section 924.051(3), which I cite above. If it needs to be said, of course we must reverse a conviction if a criminal defendant properly argues on appeal that fundamental error occurred, even if the issue was not preserved below. The issue I address here is an appellate court's obligation to address sua sponte a fundamental error that the appellant never raised. No Florida statute requires an appellate court to do so.

### *3. "Obvious" or "egregious" fundamental error*

To repeat, I agree with Chief Justice Canady that an argument for reversal must "be specifically raised and briefed to the appellate court in order for that appellate court . . . to consider it," and that "[t]his requirement of specific argument and briefing is one of the most important concepts of the appellate process." This foundational rule of appellate law does not contain a "fundamental error" exception.[5] But the *D.H.* majority opinion allows a court to reverse a judgment on an unraised issue if it constitutes "*obvious* fundamental error." In concurrence here, Judge Wolf advocates for a similar rule, finding that we should reverse a judgment based on "egregious fundamental errors" even if the appellant does not raise them. (Wolf, J., concurring at 10).

Does adding "obvious" or "egregious" to the phrase "fundamental error" narrow the range of errors that can support reversal if the error is unraised? If so, one obvious benefit would be to require a higher degree than "mere" fundamental error: while an appellant cannot raise an unpreserved issue unless it constitutes fundamental error, a court cannot raise the issue sua sponte unless it is "obvious" or "egregious" fundamental error. But an obvious drawback of such a rule is definitional. If an error is defined as fundamental when it goes "to the foundation of the case or . . . to the merits of the cause of action[,]" *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970), it is "egregious" by its nature. In other words, a truly fundamental error is an egregious error. As such, I am not certain it is helpful to decide that fundamental error can be addressed sua sponte if it is "egregious."

---

[5] It should go without saying that this rule of law applies only to arguments to *reverse* a trial court's ruling. It is just as much a fundamental rule of appellate law that the court may *affirm* (in fact *must* affirm) a ruling on any argument supported by the record, even if not raised by the appellee. *See Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 645 (Fla. 1999); *State v. Pitts*, 936 So. 2d 1111, 1133 (Fla. 2d DCA 2006) (explaining that appellate courts should affirm "even if the specific basis for affirmance has not been articulated by the appellee").

But what does it mean that a fundamental error is "obvious?" The limits of this principle are illustrated by *Berben v. State*, 268 So. 3d 235 (Fla. 5th DCA 2019), cited with approval by Judge Wolf. In that case, the panel discerned an error in the sentencing hearing that it described as fundamental. The court reversed the sentence, based on this perceived error that the court discovered itself. And yet, the decision produced a dissenting opinion, in which the dissenting judge found *no error at all. Id.* at 239-40 (Grosshans, J., dissenting). This leads to the question, how can an error be an obvious fundamental error, if one-third of the panel considering the question found that no error even occurred?[6]

I believe the same reasoning applies here. If honest and reasonable judges disagree on whether a matter even constitutes error at all, then the alleged error cannot be obvious enough to invoke a rule that a court may correct such errors even if unraised. In the context raised here, I believe a showing that the trial court tried a manifestly incompetent defendant might invoke such a rule. In contrast, a showing that the trial court did not properly comply with Rule 3.212 regarding proper findings of competency, which could *possibly*, but not necessarily, lead to an unconstitutional result, does not.[7]

---

[6] To demonstrate this point further, I cannot help but to observe that I agree with Judge Grosshans that the sentencing judge's comment in *Berben* was not inappropriate. While there could be fair debate on this issue, it seems doubtful that the error was so fundamental to the fairness of the proceeding that it demanded the appellate court to sua sponte unearth this alleged error, depart from its neutral role, and reverse the conviction on a ground unraised by the appellant.

[7] Such a rule would be consistent with the definition of fundamental error (called "plain error") used by the Georgia courts. Such error permits reversal of a conviction if the error was "obvious," if it "likely affected the outcome of the proceedings," and if it "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Smith v. State*, 737 S.E.2d 677, 681 (Ga. 2013). While this arguably ought to be the standard for fundamental error in this state, our state has permitted appellants to raise fundamental error in some contexts as long the error

*4. "Unrenunciable judicial duty"*

The dissenting opinions note that this court has ruled that it has an "unrenunciable judicial duty" to correct fundamental error, even if unraised by the appellant. I believe this phrase should be placed in context.

The first opinion to use the phrase "unrenunciable judicial duty" was *Bain v. State*, 730 So. 2d 296, 302 (Fla. 2d DCA 1999) ("As such, the correction of fundamental error is not merely a judicial power; it is an unrenunciable judicial duty."). But *Bain* had nothing to do with errors the appellant did not raise on appeal. Bain had argued on appeal that "the minimum mandatory aspect of the robbery sentence exceeds that permitted by the habitual violent felony offender statute." *Id.* at 297. The *Bain* court had to consider whether it could address this sentencing error even though it was unpreserved, concluding that it could because correction of a fundamental error was an "unrenunciable judicial duty." *Id.* at 302. The phrase was just a grandiloquent way of saying that an appellant asserting fundamental error is entitled to reversal, even if the error is unpreserved. This is hardly a novel rule of law.

The phrase was unused for nine and one-half years until this Court picked it up in *Bishop v. State*, 21 So. 3d 830 (Fla. 1st DCA

---

somehow affects a constitutional right. *Dougherty v. State*, 149 So. 3d 672 (Fla. 2014), provides an example. Because the procedures in Rules 3.210 and 3.212 "protect a defendant's right not to be tried or convicted while incompetent to stand trial," *id.* at 679, failure to comply with those procedures constitutes fundamental error. *See Zern v. State*, 191 So. 3d 962, 965 (Fla. 1st DCA 2016) (applying *Dougherty*). In other words, cases like *Dougherty* do not require that it is "likely" that the error constituted a deprivation of constitutional rights, only that procedures designed to protect those rights were not followed. I submit that an "obvious" fundamental error should be consistent with the Georgia definition of plain error. The record ought to demonstrate that it is "likely" that a constitutional right (here, the right not to stand trial while incompetent) was violated, not that it was merely possible this right was violated because proper procedures were not followed.

2008). Only this time, the phrase was used not simply as shorthand for "the court can reverse even if the issue asserted is unpreserved, if the issue constitutes fundamental error." Instead, *Bishop* ruled explicitly that the court should reverse on an issue the appellant *never asserted*: "Although Appellant did not raise this issue as a basis for reversal, we must carry out our 'unrenunciable judicial duty' to correct fundamental error and review this issue." *Id.* at 832 (citing *Bain*, 730 So. 2d at 302). In fact, *Bain* did not address unraised issues and ruled nothing of the sort.

In spite of the fact that *Bishop* applied the "unrenunciable judicial duty" language from *Bain* to an entirely new context, a few cases have cited the language from *Bishop* as support for the proposition that an appellate court must correct fundamental error sua sponte, even if the appellant does not raise it. *See Hendricks v. State*, 34 So. 3d 819, 828 (Fla. 1st DCA 2010); *Adams v. State*, 122 So. 3d 976, 979 (Fla. 2d DCA 2013); *Phelps v. State*, 236 So. 3d 1162, 1164 (Fla. 2d DCA 2018); *Berben*, 268 So. 3d at 238.[8]

Until *Bishop* came along and created a rule of law by misapplying *Bain*, no appellate court had ever ruled that it had an "unrenunciable judicial duty" to sua sponte identify error in the record and reverse a judgment because the error was fundamental. That particular rule of law has existed for only eleven years and stemmed from a misapplication of an earlier case. As such, I caution against using this phrase, and cases citing it, as evidence of a longstanding rule of appellate law requiring reversal in this circumstance.

I do not dispute that some decisions have ruled that a court can reverse on unraised error, even ones that do not use the phrase "unrenunciable judicial duty." But to the extent that district court decisions extend the right of the court to reverse on unraised error beyond that which is permitted by the Supreme Court (which, I

---

[8] It should be noted that neither *Hendricks* nor *Adams* involved reversal of a conviction. So to the extent that those cases rule that the appellate court has a duty to correct unraised fundamental error, such ruling would be dicta.

contend, circumscribes this power by limiting it to "obvious" fundamental error), then I disagree with those decisions.[9] In particular, this includes any case claiming broad authority for an appellate court to sua sponte address claims unraised by the appellant that it finds "fundamental," on the basis that the court has an unrenunciable duty to correct such error.[10]

### 5. Anders v. California

Some opinions in this case have suggested that the procedure employed to effectuate *Anders v. California*, 386 U.S. 738 (1967), demonstrates that it is acceptable for the court to review the record sua sponte and reverse a conviction if it detects error. I believe this position misconstrues *Anders*.

---

[9] I do not believe that my opinion conflicts with Florida Supreme Court decisions, as Judge Bilbrey's dissent contends. Neither *Bell v. State*, 289 So. 2d 388 (Fla. 1973) nor *Redditt v. State*, 84 So. 2d 317 (Fla. 1955), involves the court reversing a conviction, on grounds unraised or otherwise, so I submit that an opinion questioning the validity of that practice is not implicated by these decisions. Any suggestion in those cases that an appellate court could reverse a conviction based upon unraised fundamental error is plainly dicta. As for *D.H.*, I concede that I find the dissenting opinion persuasive, but my primary point about it is that we should give meaning to the term "obvious" when it discusses "'obvious' fundamental error." I do not believe that making this point "conflicts" with *D.H.*

[10] District court cases are not uniform in their approach to the court's right or duty to address unraised fundamental error. Some cases have in fact ruled that an appellate court *may not* consider an unraised fundamental error. *See, e.g., Grimsley v. State*, 939 So. 2d 123, 125 (Fla. 2d DCA 2006) (finding that it was "precluded from reviewing" a possible fundamental error "because it was not raised on appeal"). *Cf. Williams v. State*, 845 So. 2d 987, 989 (Fla. 1st DCA 2003) (ruling that the court "cannot consider" possible fundamental errors because the appellant "failed to raise these issues in the initial brief"). This belies any suggestion that such review is clearly permitted (or required) by the case law.

*Anders* suggests a procedure to ensure the right to counsel where appointed counsel believes the record presents no non-frivolous issues:

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Id.* at 744. The point of *Anders* is not to require the appellate court to provide an extra layer of review to criminal judgments. It is to ensure that a defendant receives the right to counsel guaranteed by the United States Constitution when appointed counsel finds that an appeal would be wholly frivolous. When counsel so concludes, the *Anders* procedure requires the appellate court to review the record to determine that it agrees with counsel's assessment that an appeal would be wholly frivolous. Appellants like Rosier, in contrast, have counsel who filed a brief arguing for reversal. He has already received his constitutional right to counsel, unlike a defendant whose appointed counsel finds no argument for reversal. Accordingly, there is no reason for the court to conduct its own review.[11] As such, I do not believe that *Anders*

---

[11] It should be noted that the United States Supreme Court does not require the *Anders* procedure. *See Smith v. Robbins*, 528 U.S. 259, 276 (2000). In fact, several states have rejected the *Anders* requirements in part because they "place[] the appellate court in the inappropriate role of defense counsel, forcing the court

should be used to encourage appellate courts to depart from judicial impartiality in cases where an argument for reversal has been made.

### 6. Problems with sua sponte review for fundamental error

To be clear, I do not dispute that some cases contain language allowing an appellate court to reverse based on fundamental error not raised by the appellant. I do, however, dispute the broad assertion of authority to do so expressed by some opinions here, which I read as "if the court finds fundamental error, it should reverse." I find that the scope of this right raises as many questions as it answers:

- Is the appellate court *permitted* to reverse on unraised fundamental error, or is it *required* to reverse? If it is merely permitted, how should the court exercise its discretion to do so?

---

to devise and recommend viable legal arguments for subsequent appellate counsel." *State v. Cigic*, 639 A.2d 251, 252 (N.H. 1994); *see also In re Attorney's Fees of Mohr*, 32 P.3d 647, 653 (Haw. 2001) ("It has been and continues to be the policy of this court not to permit *Anders* briefs. We think the better policy is to require counsel to remain an advocate for the client. . . . This policy reposes advocacy with counsel and judging with the court."); *Ramos v. State*, 944 P.2d 856, 858 (Nev. 1997) ("The adversary system has served the administration of justice long and well. . . . The *Anders* compromise with our traditional adversary process has failed to justify itself." (quoting *Gale v. United States*, 429 A.2d 177, 183 (D.C. 1981) (Ferren, J., dissenting))); *State v. Wilson*, 83 N.E.3d 942, 947 (Ohio Ct. App. 2017) ("The *Anders* procedure has also been criticized for creating a role reversal between counsel and the court and removing the adversarial nature of the judicial system."). *Anders*, a controversial outlier in the regular adversary judicial system, does not suggest that we should sua sponte reverse here.

20

- If the appellate court is required to reverse (i.e., has an "unrenunciable duty" to reverse) unraised fundamental error, does it have a duty to review the entire record for such error, regardless of what the appellant raised on appeal? Doesn't the phrase "unrenunciable duty" suggest that the appellate court *must* review the entire record?

- For instance, if the appellant raises only a sentencing issue, is the appellate court required to review the trial transcript for fundamental error?

- Is the appellate court required to supplement the record with parts of the proceedings that were not included in the record on appeal, in order to search for fundamental error?

- Or is the appellate court required only to correct unraised fundamental error if it happens to stumble upon it?

- Doesn't the latter procedure (i.e., the court does not need to look for unraised fundamental error, but must address it if it happens to notice it) conflict with a court's "unrenunciable duty" to correct fundamental error? And doesn't it invite arbitrary decisions, where relief is premised upon the court happening upon an error?

This last concern is demonstrated by *Berben*. The only sentencing argument raised by the appellant there was that the sentence imposed was disproportionate to the crime. *Berben*, 268 So. 3d at 236. An appellate court can address this question without resort to the sentencing transcript. Suppose one panel considering a case with this matter addressed the proportionality issue without detecting the claimed error in the sentencing transcript, but another panel considering another case with this matter—like the one in *Berben*—reviewed the sentencing transcript and concluded that the trial judge's comments were erroneous. Has justice been "applied fairly and evenly"? *Id.* at 239 (Cohen, J., concurring). Did the first panel do anything wrong by not noticing the unraised error in a transcript unrelated to the issue on appeal? I submit that this concern shows that an appellate panel that takes

21

it upon itself to review the record for unraised error risks arbitrary justice far more than the panel that confines itself to the issues raised on appeal.

With these observations, I concur with the majority opinion.

M.K. THOMAS, J., concurring.

"If judicial review means anything, it is that judicial restraint does not allow everything." *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W. 3d 126, 163 (Tex. 2010) (Willett, J., concurring). The case before us presents no error in Mr. Rosier's competency determination—much less error of an obvious and fundamental nature. Thus, argument regarding an appellate court's obligation to correct unraised fundamental error is purely academic.

The trial court previously adjudged Mr. Rosier incompetent based on a psychiatric evaluation. He was committed to Florida State Hospital for treatment. Eight months later, the Department of Children and Families (DCF) informed the trial court that Mr. Rosier no longer met the criteria for continued commitment pursuant to an updated forensic mental health competency assessment and evaluation. In response, the trial court entered an Order to Transport and Notice of Hearing. The order attached the mental health evaluation, ordered Mr. Rosier transported to a detention facility and a competency hearing to be scheduled. On August 13, 2014, at a hearing on the matter, defense counsel informed the trial court that Mr. Rosier had been discharged from Florida State Hospital but that no competency hearing had yet been conducted. Defense counsel advised she was not disputing competency "but I ask that we set [a hearing] first, prior to setting it for trial." The state announced a willingness to stipulate to competency and allow the trial court to enter an immediate order. However, defense counsel clarified that although amenable to such a stipulation, she wanted Mr. Rosier present for the competency proceeding. Accordingly, the competency hearing was reset for the next day.

The parties reconvened on August 14, 2014, with Mr. Rosier present. The competency hearing transcript shows that defense counsel advised the court of the following: Mr. Rosier had been

discharged from Florida State Hospital; the report from the updated mental health evaluation declared Mr. Rosier competent to proceed to trial; she had conferred with Mr. Rosier personally and reviewed the report with him; she provided an update to the report's recommendation that Mr. Rosier continue his medication regimen; she advised that in speaking to Mr. Rosier and his case manager that Mr. Rosier was no longer in need of or taking psychotropic medications; and she took steps to confirm that Mr. Rosier was no longer on psychotropic medications by contacting his detention facility. The trial court then proceeded to question Mr. Rosier on his mental status and medications. With no contrary argument from the state, the trial court orally advised Mr. Rosier that she found him competent to proceed and would set a docket sounding and trial date. Subsequently, the trial court entered an Order Finding Defendant Competent to Proceed. The order advised that the matter came before the court on the report of the Florida State Hospital psychologist and Mr. Rosier was found competent to proceed.

The dissent initially argues that Mr. Rosier was entitled to "a" hearing to determine his competency. However, as the record contains a transcript of the competency hearing, the dissent detours to challenge the adequacy of the proceeding. In addition to the dissent's consideration of argument not presented on appeal, I am troubled by the dissent's citation of *Dougherty* and *Zern* as establishing a "thoroughness test" for competency hearings. *Dougherty v. State*, 149 So. 3d 672 (Fla. 2014); *Zern v. State*, 191 So. 3d 962 (Fla. 1st DCA 2016). I readily profess blindness to this application as I fail to see such a bright-line test announced in either case. Independent of the judicial obligation versus restraint debate, I expressly reject that a "thoroughness test" has been pronounced in *Dougherty* or *Zern*. In *Dougherty*, no hearing occurred because the parties stipulated to competency, the trial court did not engage in independent analysis and no competency order was entered. *Dougherty*, 149 So. 3d at 674-75. In *Zern*, although the trial court conducted a competency hearing, "the trial court relied on the stipulation of defense counsel and the preponderance of the experts' ultimate opinions to make its competency determination, without having read all the evaluations." 191 So. 3d at 965. In *Dougherty*, our supreme court advised that pursuant to Florida Rules of Criminal Procedure

3.210-3.212, a trial court may, if the parties agree, "decide the issue of competency on the basis of the written reports alone, it cannot dispense with its duty to make an independent determination about a defendant's competency and must enter a written order if the defendant is found competent to proceed." 149 So. 3d at 679. Here, the trial court considered the mental health reports, information provided by defense counsel on her contacts with Mr. Rosier and his mental health caregivers and case manager and the update on his medication regimen. In addition, the trial judge personally questioned Mr. Rosier before entering an order of competency.

After the updated mental health evaluation, the record presents no hint of incompetency that would require a closer scrutiny than afforded Mr. Rosier. Thus, our analysis should be tailored accordingly. Placing artificial parameters on competency hearings without deference to the factual particularities opposes the axiom of judicial discretion—here, to discern the necessary depth of a hearing to reach the required independent determination of competency. Indeed, under these facts Mr. Rosier was afforded every procedural due process protection, and the trial court's independent determination of his competency fully complied with requirements of the Rule and *Dougherty*.

I acknowledge that in *D.H. v. Adept Community Services, Inc.*, No. SC17-829, 2018 WL 5660595, *6 (Fla. Nov. 1, 2018), our supreme court advised, "[e]ven though an issue has been abandoned, an appellate court may nonetheless address that issue if it involves the court's 'jurisdiction or other issues raising obvious fundamental errors.'" (quoting *All. for Conservation of Nat. Res. in Pinellas Cty. v. Furen*, 122 So. 2d 51, 65 (Fla. 2d DCA 1960)). This judicial power to review unpreserved fundamental error is permissive and should be deliberately rationed. However, appellate consideration of unraised fundamental error undermines the very confidence and predictability of the rules of appellate procedure. As Justice Canady described in his dissent, "[t]his requirement of specific argument and briefing is one of the most important concepts of the appellate process." *Id.* at *13.

Contrary to the dissent's argument, the majority has not chosen to turn a blind eye to its judicial obligations or to any error,

much less an obvious fundamental one, nor has it rationalized a judicial ratification of an invalid stipulation. With both eyes open and clear vision, we simply see no error here. Notably, when properly raised by the appellant in briefing, this Court has frequently reversed trial court orders on competency, when the trial court failed to make an independent determination of competency as required by the Rule and *Dougherty*. *See Johnson v. State*, 264 So. 3d 259 (Fla. 1st DCA 2019); *Boren v. State*, 262 So. 3d 243 (Fla. 1st DCA 2018); *Oats v. State*, 253 So. 3d 1265 (Fla. 1st DCA 2018); *B.E. v. State*, 253 So. 3d 772 (Fla. 1st DCA 2018); *Pearce v. State*, 250 So. 3d 791 (Fla. 1st DCA 2018); *Robinson v. State*, 250 So. 3d 777 (Fla. 1st DCA 2018); *Francis v. State*, 248 So. 3d 263 (Fla. 1st DCA 2018); *Berry v. State*, 237 So. 3d 1165 (Fla. 1st DCA 2018); *Pamphile v. State*, 216 So. 3d 765 (Fla. 1st DCA 2017); *Trueblood v. State*, 193 So. 3d 1060 (Fla. 1st DCA 2016); *Zern,* 191 So. 3d 962. Here, the lack of error dictates otherwise.

Under a banner of judicial obligation, the dissent promotes an "*Anders-esque*" review of all appellate cases. *See Anders v. California*, 386 U.S. 738 (1967) (holding that an appellate court assumes the responsibility of conducting a full and independent review of the case to discover any arguable issues apparent on the face of the record). However, this unfettered appellate review may result in egregious sentencing consequences and further due process concerns. As Judge Bilbrey profoundly recognizes in his dissent, an appellate court's unsolicited takeover of a defendant's case (especially when the defendant is represented by counsel) may not necessarily be a "win." Respectfully, the dissent's promotion of a strike zone of judicial obligation to correct unraised error creates a dangerous and unpredictable playing field. As this case presents no error with respect to the competency proceeding, I join the majority.

MAKAR, J., dissenting.

"Justice is blind," the adage symbolizing an impartial judiciary, doesn't mean that appellate judges must put on blinders when fundamental errors stare at them from an appellate record, particularly errors affecting a defendant's constitutional right not to be tried while incompetent, which in this case involves a perfunctory judicial ratification of an unlawful stipulation of

counsel that the competency of a previously incompetent defendant had been restored. *Zern v. State*, 191 So. 3d 962, 964–65 (Fla. 1st DCA 2016) (fundamental due process error where trial court accepts a stipulation of competence); *Belizaire v. State*, 188 So. 3d 933, 935 (Fla. 1st DCA 2016) (same).

*Appellate Court's Duty to Correct Fundamental Error*

Florida's appellate courts have long recognized judicial authority—and a "unrenunciable" duty—to correct fundamental errors, meaning those of such gravity that ignoring and not correcting them would diminish public respect for the judicial process, even if those errors were not preserved at trial, not raised on appeal in the briefing process, or raised by the appellate court on its own. *See, e.g.*, *Bell v. State*, 289 So. 2d 388, 391 (Fla. 1973) ("It is the long standing rule of this Court that when assignments of error are not argued in the briefs they will be deemed abandoned *unless* jurisdictional or *fundamental error appears in the record*.") (emphasis added); *Hendricks v. State*, 34 So. 3d 819, 828 (Fla. 1st DCA 2010) ("Despite Appellant's failure to argue fundamental error, we consider whether the purported error is of a fundamental nature because it is an appellate court's 'unrenunciable judicial duty' to correct fundamental error even if it is not raised.") (citation omitted); *I.A. v. H.H.*, 710 So. 2d 162, 165 (Fla. 2d DCA 1998) ("Although positions that are not presented to the trial court or argued on appeal generally are waived, *it is our duty to notice and correct jurisdictional defects or fundamental errors even when they have not been identified by the parties*.") (emphasis added); *Bain v. State*, 730 So. 2d 296, 302 (Fla. 2d DCA 1999) ("the correction of fundamental error is not merely a judicial power; it is an unrenunciable judicial duty."); *J.V. v. State*, 221 So. 3d 689, 691 (Fla. 4th DCA 2017) ("Although appellant does not raise this issue on appeal, we conclude that [pleading defect] amounts to fundamental error which can be addressed sua sponte."); *Honaker v. State*, 199 So. 3d 1068, 1070 (Fla. 5th DCA 2016) (appellate court "may sua sponte address fundamental error apparent on the face of the record"); *see also* § 924.051(3), Fla. Stat. (2019) ("A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court *or, if not properly preserved, would constitute fundamental*

26

*error*.") (emphasis added). By its nature, "fundamental error is not subject to harmless error review." *Reed v. State*, 837 So. 2d 366, 369-70 (Fla. 2002).

As the Fifth District recently held, "an appellate court may sua sponte address such an error if it is determined to be fundamental and is apparent on the face of the record." *Berben v. State*, 268 So. 3d 235, 238 (Fla. 5th DCA 2019). Florida's fundamental error doctrine parallels the federal plain error doctrine, whose foundational parameters were based on *United States v. Atkinson*, 297 U.S. 157, 160 (1936), which held that "[i]n exceptional circumstances, especially in criminal cases, *appellate courts*, in the public interest, *may, of their own motion*, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." (Emphasis added). *See generally* Fed. R. Crim. P. 52(b) (2019) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *see also* § 90.104(3), Fla. Stat. (2019) (noting that a court may take "notice of fundamental errors affecting substantial rights, even though such errors were not brought to the attention of the trial judge."). Again, the error in question need not have been preserved at trial or raised in the briefing process; it can be addressed by an appellate court on its own, much as in *Anders* cases where an appellate court "assumes the responsibility of conducting a full and independent review of the record to discover any arguable issues apparent on the face of the record." Michael Ufferman, § 20:7. Anders review, 22 Fla. Prac., Criminal Practice & Procedure § 20:7 (2019 ed.) (citing *Anders v. State*, 386 U.S. 738 (1967), and *State v. Causey*, 503 So. 2d 321, 323 (Fla. 1987) (reading *Anders* to "allow both the appellant and the state to submit briefs *on issues that the court has found in its independent review to be arguable on the merits*.") (emphasis added).

Our supreme court has made clear that an appellate court has an obligation to correct fundamental errors in the "interests of justice." *Ray v. State*, 403 So. 2d 956, 960 (Fla. 1981); *see also Smith v. State*, 521 So. 2d 106, 108 (Fla. 1988); *Bain,* 730 So. 2d at 302 (purpose of fundamental error doctrine "extends beyond the interests of a particular aggrieved party; it protects the interests

of justice itself. It embodies the courts' recognition that some errors are of such a magnitude that failure to correct them would undermine the integrity of our system of justice.") The doctrine is not a judicial license to correct any and all errors; instead, it is applied in those infrequent instances where errors go to the "foundation of the case or goes to the merits of the cause of action." *Ray*, 403 So. 2d at 960. The list of fundamental errors includes the total failure of evidence to establish the commission of a crime, the facial unconstitutionality of a criminal statute used to charge a defendant, double jeopardy violations, convictions for non-existent offenses, as well as denials of due process including the failure to provide a hearing required by the criminal procedure rules. *See generally* Philip J. Padovano, § 27:3. Fundamental Error, 2 Fla. Prac., Appellate Practice § 27:3 (2018 ed.) (citing cases); *see, e.g.*, *F.B. v. State*, 852 So. 2d 226, 230-31 (Fla. 2003) (holding that evidence that "is totally insufficient as a matter of law to establish the commission of a crime need not be preserved" and "meets the requirements of fundamental error-i.e., an error that reaches to the foundation of the case and is equal to a denial of due process.").

*Due Process & Incompetency*:
*Reliance on a Stipulation is Fundamental Error*

The list of fundamental errors includes due process violations arising from inadequacies in determining a defendant's competency to stand trial. The due process right of a defendant to not be subject to trial when incompetent is a long-standing and weighty one. *Drope v. Missouri,* 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."); *see also Medina v. California,* 505 U.S. 437, 446 (1992) ("The rule that a criminal defendant who is incompetent should not be required to stand trial has deep roots in our common-law heritage."); *Cotton v. State*, 177 So. 3d 666, 667–68 (Fla. 1st DCA 2015) ("It is a due process violation to proceed against an incompetent criminal defendant."); *see generally Hopkins v. State*, 632 So. 2d 1372, 1374 (Fla. 1994) (unpreserved error is fundamental if it is "basic to the judicial decision under review and equivalent to a denial of due process.").

28

As this Court has held, fundamental error occurs when an incompetent criminal defendant is denied an *adequate* process and a meaningful and independent judicial hearing by which his current competency to stand trial is reviewed and adjudged in a conscientious way. *Zern*, 191 So. 3d at 964 ("A criminal defendant has a procedural due process right to the observance of procedures *adequate* to protect his or her right not to be tried or convicted while incompetent to stand trial.") (emphasis added). Indeed, an "independent competency finding is a due-process right that *cannot be waived*" such that a trial court "*fundamentally err[s]* in failing to make such a finding." *Id.* at 965 (emphasis added). Stated differently, where the record demonstrates that a competency decision is not based on the trial court's independent determination of a defendant's current competency, fundamental error is shown.

In this regard, it is a non-waivable fundamental error where a *stipulation* of a defendant's competency is relied upon in the competency process. The reason is that reliance on a stipulation "improperly absolves the trial court from making an independent determination regarding a defendant's competency to stand trial." *Dougherty v. State*, 149 So. 3d 672, 678 (Fla. 2014); *see also Zern*, 191 So. 3d at 964 (trial court "is not permitted to merely accept a stipulation of competence."). As stated in *Ross v. State*, 155 So. 3d 1259 (Fla. 1st DCA 2015):

> In order to proceed against a defendant who has been adjudicated incompetent, the trial court first must hold a hearing to determine whether the defendant's competency has been restored, review evidence from experts during the hearing, *make an independent determination that the defendant's competency has been restored*, and enter a written order to that effect. *These requirements cannot be waived by a stipulation.*

*Id.* at 1259-60 (citing *Dougherty*) (emphasis added); *see also Belizaire*, 188 So. 3d at 935 (same).

Counsel may agree to have the independent judicial determination of competency be based on expert *reports* without live testimony, but those reports are only advisory. *Zern*, 191 So.

29

3d at 964. *Stipulations* as to competency are not reports, however, and cannot be relied upon at all else the independent judicial determination is compromised, resulting in fundamental error. *Id.* Reliance on a stipulation, even in part, violates due process even where other evidence is considered. *Id.* ("acceptance of a stipulation is improper even when all the experts have opined that the defendant is competent, as other evidence may indicate incompetence."). For example, in *Zern* this Court noted that the "trial court relied on the stipulation of defense counsel *and* the preponderance of the experts' ultimate opinions to make its competency determination, without having read all the evaluations." *Id.* at 965 (emphasis added). By doing so, the trial court failed to make an "independent finding" and thereby "fundamentally erred" in doing so. *Id.*

*Stipulation to Rosier's Competency*
*& The "Two Second" Hearing*

Turning to this case, Roger N. Rosier was adjudicated incompetent to stand trial in October 2013 for resisting arrest, the trial court ruling that Rosier was "suffering from a serious, chronic major mental illness" and presenting himself as "psychotic and significantly impaired in his thinking, which is disorganized and delusional." Rosier's "disordered thinking would almost certainly interfere with his being able to" assist in his defense and "testify relevantly" at trial; it was "highly unlikely" that he would be able to engage in appropriate courtroom behavior; and he had an "inadequate appreciation of the charges, the possible penalties" he faced, and the "adversarial nature of the legal process." As such, he was deemed incompetent to proceed with any legal proceedings and was involuntarily placed for psychiatric hospitalization due to the "real and present threat of substantial harm" to his well-being.

Nine months later, a report from Florida State Hospital deemed Rosier competent to stand trial and a hearing on the matter was set for July 9, 2014 before the original trial judge who had found Rosier incompetent. That hearing, however, did not take place. Instead, on August 13, 2014, the prosecutor and appointed defense counsel met to docket the case for trial with a new judge who had never observed Rosier. After the trial date was set, it

occurred to Rosier's counsel that a restored competency hearing had not yet been held.

> [Defense counsel]: We have not had a competency hearing for Mr. Rosier. I ask that we set that so that – *we're not disputing competency*—but I ask that we set that first, prior to setting it for trial.

> [Prosecutor]: *If you stipulate, we can do it right now. Your Honor, if there's a stipulation as to his competency, that can be done per stipulation*, then the Court can rule on it.

> [Defense counsel]: *We're stipulating that he's competent.* He's not present, but I would prefer him to be present. If we can reset it for court tomorrow, so that we can address it.

The trial judge, who expressed frustration with counsel due to last minute rescheduling complications,[12] was concerned about how much time the stipulated competency matter would take, saying "How long is it going to take, *two seconds*?" Appointed counsel responded, saying "it won't take more than – more than *thirty seconds*" because "*[w]e're stipulating that he's competent.*"

Based on the stipulation of the prosecutor and appointed counsel, the "hearing" the following day was—as predicted— perfunctory, amounting to less than two pages of transcript. The trial court asked only whether Rosier felt well ("I'm good. . . . A lot better."), and whether he was taking any medications or psychotropic drugs ("No ma'am."). With that, Rosier—diagnosed with severe mental illness and deemed incompetent to stand trial and a harm to himself ten months earlier—was pronounced

---

[12] The trial court said, "I mean, this is the problem. In the last twenty-four hours, the e-mails blow up, the phone calls blow up, everything gets moved around; it's insane. . . . So, do y'all start looking at your cases forty-eight hours before court? Because it is like everything goes crazy."

competent to proceed, a standard order was issued,[13] and he was tried and convicted.

*Fundamental Error on the Face of the Record*

As in *Zern*, *Belizaire*, and other stipulation of competency cases, the requirements of an adequate competency process were not met in Rosier's case because there is no indication that sufficient judicial review was done to form an "independent determination that the defendant's competency has been restored." *Ross*, 155 So. 3d at 1259 (citing *Dougherty*). This is so because the prosecutor and appointed counsel stipulated to Rosier's competency. Both believed—and had agreed the day before the "hearing" without Rosier present—that a competency determination could be done by stipulation. Appointed counsel, who preferred a hearing the next day when Rosier would be present, said the hearing would take only "thirty seconds" and the trial judge thought even less ("two seconds"), which confirms that the seconds-long "hearing" was simply to ratify the stipulation. This rote ratification of a stipulation is much like *Belizaire*, where defense counsel told the trial judge the defendant was competent to proceed to trial (based on the expert reports of the state and the defense) to which the trial court responded, "All right." 188 So. 3d at 935. This Court concluded that it "must interpret the court's statement of 'All right' as simply accepting [defendant's] counsel's stipulation that because both experts found [defendant] competent, they could proceed with the trial." *Id*. Reversal and a remand was the result.

---

[13] The trial court's order stated:

THIS CAUSE having come before the Court on the report of Leslie Dellenbarger, Psy.D. Senior Psychologist, Florida State Hospital of June 19, 2014, that the Defendant is competent to proceed, and the Court being fully advised in the premises, it is hereby

ORDERED AND ADJUDGED:

1. The Defendant is currently competent to proceed to trial.

Of note, Rosier was never asked about the state's expert report or whether he agreed to it. Nor was he asked whether he was aware of or agreed with the lawyers' stipulation of his restored competency. And the trial judge neither discussed nor stated she'd reviewed the report – why would she if there was a stipulation? *Cf. Hunter v. State*, 174 So. 3d 1011, 1014-15 (Fla. 1st DCA 2015) (where the trial court, "on the record, did consider the two reports from the forensic mental health specialists concluding that Hunter's competency was restored."). Her observation and questioning of Rosier were cursory at best. Her written order, which simply says the matter had "come before" the court on the state's report, doesn't show that the judge actually reviewed or relied on it. *Zern*, 191 So. 3d at 965 (failure to make independent finding where no showing that trial judge "read all the evaluations."); *cf. Merriell v. State*, 169 So. 3d 1287, 1288 (Fla. 1st DCA 2015) (where "the court stated that it had reviewed the evaluation" and "relied on it as permitted by the rules" to find the defendant competent to proceed). Indeed, the order's boilerplate language (that the court was "fully advised in the premises") supports the appearance that the court was ratifying the stipulation; after all, the trial judge had been "fully advised" the prior day of the stipulation and envisioned a "two second" hearing. The language saying the report had "come before" the trial court doesn't mean it was actually reviewed or relied on; why take the time to do so where a stipulation is in place? Rosier's attorneys, both at trial and on appeal, contributed to the problem, as did the prosecutor and trial judge: none of them balked at judicial ratification of a stipulation of competency at a pro forma "hearing" that took negligible time.

On the face of the record, the "hearing" does not reflect the type of independent judicial determination the caselaw requires to establish that Rosier's competency had been restored. In a sense, it was not a hearing at all but merely a mechanical and superficial rubber-stamp of the lawyers' stipulation of competency for which relief is justified.

*The Panel Majority Properly Adjudicated the Competency Issue,*
*Which Presented a Non-Waivable Fundamental Error*

The appellate panel, like the en banc court itself, has a duty to review the record for fundamental errors even those not directly raised by the defendant. This is a criminal appeal, one in which an appellate panel should not ignore fundamental error that appears in the record. *Causey*, 503 So. 2d at 322–23 ("While courts should not assume the role of appellate counsel, reversible error should not be ignored simply because an indigent appellant *or a public defender* failed to point it out.") (emphasis added). Had this case been presented to the Court via an *Anders* brief or by Rosier pro se, the same obligation would attach: The Court should review the record for fundamental error and not abandon the inquiry simply because appointed counsel didn't do its job well enough.

In this case, the parties' briefs directed the panel to a potential problem with the competency determination. The panel majority did not "sua sponte" raise the competency issue, as has been suggested. Rather, appointed counsel's brief asserted the lack of any hearing; the State's brief countered that a hearing was held (supplementing the record with transcript excerpts) and that it was adequate,[14] thereby focusing the panel's attention on the issue. It is plausible that Rosier's appellate counsel simply overlooked or was unaware of the three to four pages of supplemental transcript comprising counsels' stipulation to Rosier's competency and the perfunctory "hearing" the next day. But a reply brief (or a request to submit an amended initial brief) ought to have been forthcoming once those transcript pages became known.

Even if the competency issue hadn't been raised in the briefing process, however, it was permissible to consider it sua sponte because an adequate competency determination is a *non-waivable* due process right, the denial of which is fundamental error that a panel cannot disregard. *Zern*, 191 So. 3d at 965 ("[A]n independent competency finding is a due-process right that cannot be waived

---

[14] Perhaps because it recognized the fundamental nature of the issue, the State spent all but one page of its answer brief arguing that the competency determination was adequate.

once a reason for a competency hearing has surfaced . . . .”). As such, it is irrelevant whether Rosier's appellate counsel adequately raised the issue. *Id.*; *Cotton*, 177 So. 3d at 667. Perhaps the panel should have issued a *Causey* order and ordered supplemental briefing, but the State had already briefed the issue, and the panel majority was well-versed in the applicable precedent, such that no prejudice was shown. *In re Order of First Dist. Court of Appeal Regarding Brief Filed in Forrester v. State*, 556 So. 2d 1114, 1117 (Fla. 1990); *Cotton*, 177 So. 3d at 667 (ordering supplemental briefing in *Anders* appeal where the panel's "independent review of the record" identified potential error in competency process). The error was obvious, and the record supported reversal.

Because the trial judge did not conduct an independent competency determination, fundamental error exists and *Zern*, *Belizaire*, and like cases control. Simply "going through the motions" and ratifying counsels' stipulation as to competency in a perfunctory and pre-ordained process doesn't cut it under the caselaw. *See Dougherty*, 149 So. 3d at 678 ("[N]othing in our precedent or the State's argument persuades us that a defendant can stipulate to the ultimate issue of competency, even where the written reports reach the same conclusion."). Due process goes beyond checking boxes. That a hearing (of sorts) was held doesn't mean it was adequate. For example, this Court's review of the record in *Zern* showed the "trial court *relied on the stipulation of defense counsel* and the preponderance of the experts' ultimate opinions to make its competency determination, *without having read all the evaluations*." 191 So. 3d at 965 (emphasis added). In that case, the trial court wasn't "adequate" enough to meet due process standards, in part, because of the reliance on the stipulation and the failure to read "all the evaluations." *Id.* In contrast, this case presents *no evidence* to support a finding that the trial judge read anything, which wouldn't be surprising given counsels' stipulation without Rosier present that his competency had been restored and that the "hearing" to ratify the counsels' stipulation would take "thirty seconds" or just "two seconds" as the trial judge prognosticated.

*Conclusion*

The en banc court has chosen to exercise its discretion by turning a blind eye to an obvious fundamental error that is easily corrected by a remand and a proper competency hearing, instead leaving it to the post-conviction process to rectify the due process violation and potential ineffectiveness of counsel. I would correct the error now, guided in part by the following statement of principles:

> Although fundamental error is extraordinarily difficult to define, *the doctrine functions to preserve the public's confidence in the judicial system. Relief is granted* for a fundamental error not because the party has preserved a right to relief from a harmful error, but *because the public's confidence in our system of justice would be seriously weakened if the courts failed to give relief as a matter of grace for certain, very limited and serious mistakes.*

*Hagan v. Sun Bank of Mid-Florida, N.A.*, 666 So. 2d 580, 584 (Fla. 2d DCA 1996) (emphasis added), *disapproved of on other grounds by Murphy v. Int'l Robotic Sys., Inc.,* 766 So.2d 1010 (Fla. 2000). For my part, I fail to see how rationalizing and upholding a perfunctory judicial ratification of an invalid stipulation of competency, which this Court has previously held is fundamental error (*Zern*, *Belizaire*), does anything other than diminish this confidence.

\* \* \*

*Postscript*

A few points are worthy of mention. First, the point of departure in this case is the majority's unwillingness to look beyond the initial brief, even though statutory law and precedent authorize doing so. It is one thing to engage in fundamental error review and conclude that no error, fundamental or otherwise, exists; it is quite another to say the Court simply will not engage in fundamental error review *at all* when an issue was unpreserved or not raised on appeal. The former is defensible, the latter is not. Second, none of the dissenters in this case make any claim that an

36

"appellate court must act as standby counsel" or that a court must "scour the record" in every case for fundamental record, as the majority charges. These are classic straw men statements, designed to distract from the merits of the case. Third, the majority's first sentence is misleading because it says that Rosier's conviction was reversed, but it fails to mention the case was remanded for a hearing at which Rosier's competence would be reviewed; if the trial judge determined nunc pro tunc that Rosier was competent, his conviction would stand; if not, a new trial would be required, which is standard relief in this type of case.

Next, Judge Winokur would depart from precedent and preclude an appellate court from correcting fundamental errors on its own, citing Justice Canady's dissent in *D.H. v. Adept Cmty. Servs., Inc.*, No. SC17-829, 2018 WL 5660595 (Fla. Nov. 1, 2018). Fairly read, however, Justice Canady's opinion did not advocate renunciation of fundamental error analysis; instead, he advocated that "[i]n the end, *absent some exception to the waiver doctrine* [such as the fundamental error doctrine], an appellant who abandons an argument cannot benefit from that argument in the future." *Id.* at *13. Plus, *D.H.* is a civil case, which has a higher fundamental error standard than criminal cases in which due process and liberty interests are most prominent. *See Norman v. Gloria Farms, Inc.*, 668 So. 2d 1016, 1027 n.1 (Fla. 4th DCA 1996) ("In other words, the threshold for finding fundamental error must actually be lower in criminal cases to insure that an accused person's rights under the fourth, fifth and sixth amendments are not lost" in the criminal process.) (Farmer, J., dissenting); *see generally* Valeria Hendricks, *Pop Quiz: Why Is Fundamental Error Like Pornography?*, 76 Fla. B.J. 77, 78 (2002) (analyzing fundamental error doctrine's application at various stages of civil cases, noting that courts are "likely to see fundamental error in constitutional issues involving due process.").

His claim that the lack of preservation precludes appellate review under a fundamental error exception is directly contrary to established precedent. *See, e.g.*, *Bain*, 730 So. 2d at 302 ("appellate review of fundamental error is, by its nature, an exception to the requirement of preservation. Indeed, it is only in this context that the concept has meaning. Put another way: no rule of preservation can impliedly abrogate the fundamental error doctrine because the

doctrine is an exception to every such rule."). He would apparently ignore the Legislature's clearly expressed will as set forth in section 924.051(3), which allows appellate courts to review and reverse judgments and sentences in cases where unpreserved errors "constitute fundamental error." What circumstances constitute fundamental error *are* open to debate, but the fundamental error doctrine's application to issues not raised on appeal *is not*.

Finally, Florida's appellate judges—who for decades through the present have conscientiously applied the fundamental error doctrine in hundreds of cases—are not roving squadrons of unrestrained judicial activists looking to assist criminal defendants by overturning convictions. Far from it. They are simply doing their duty as defined by statute, precedent and the circumstances of each case as they deem proper. Fundamental error (and *Anders* review) are nothing new in Florida's judicial system. If the Legislature and our supreme court (or the people by constitutional amendment) want to alter or abolish the fundamental error doctrine, that is up to them, not us. Until that happens, our duty is to correct fundamental error on the face of the record as the Legislature and our supreme court have authorized.

BILBREY, J., dissenting.

I join Judge Makar's dissent.[15] I write separately for two purposes. First, to dispute the contention that we must ignore the error here — which was fundamental — since the error was not raised by the Appellant. Second, to emphasize that I believe nothing in the record shows the trial court fulfilled "its duty to independently make a determination of a defendant's competency to proceed." *Dougherty v. State*, 149 So. 3d 672, 673 (Fla. 2014). As such remand for further proceedings is necessary.[16]

---

[15] I agree with the majority that the discretionary fine and surcharge must be reversed.

[16] Although I believe Appellant should prevail on the appeal, I am not sure that "winning" is ultimately in Appellant's best interest. He was found guilty of the lesser included misdemeanor offense of resisting an officer without violence and sentenced to

38

On my first point, the general rule — as discussed by the en banc majority — is that error must be raised by an appellant in the initial brief to be considered by an appellate court. *See Doe v. Baptist Primary Care, Inc.*, 177 So. 3d 669 (Fla. 1st DCA 2015); *City of Bartow v. Brewer*, 896 So. 2d 931 (Fla. 1st DCA 2005); Fla. R. App. P. 9.210(b)(1)&(5). But like so many areas of law there is a key exception to the general rule, and the exception applies here. Even if an issue is not raised by an appellant, "an appellate court may nonetheless address that issue if it involves the court's 'jurisdiction or other issues raising obvious fundamental errors.'" *D.H. v. Adept Cmty. Servs., Inc.*, 43 Fla. L. Weekly S533, S535, 2018 WL 5660595, *6 (Fla. Nov. 1, 2018) (quoting *Alliance for Conservation of Nat. Res. in Pinellas Cty. v. Furen*, 122 So. 2d 51, 65 (Fla. 2d DCA 1960)).

The ability of an appellate court to address jurisdictional or fundamental error is not a mere suggestion as the majority claims. Majority Op. at 4. Rather, it is a well-established holding from the Florida Supreme Court, this court, and other courts. In *Hendricks v. State*, 34 So. 3d 819, 828 (Fla. 1st DCA 2010), we stated:

> Despite Appellant's failure to argue fundamental error, we consider whether the purported error is of a fundamental nature because it is an appellate court's "unrenunciable judicial duty" to correct fundamental error even if it is not raised. *See Bain v. State,* 730 So. 2d 296, 302 (Fla. 2d DCA 1999) (called into doubt on other grounds in *State v. Jefferson,* 758 So.2d 661, 664 (Fla. 2000)); *see also I.A. v. H.H.,* 710 So. 2d 162, 165 (Fla. 2d DCA 1998) (noting that it is an appellate court's "duty to notice and correct ... fundamental errors even when they have not been identified by the parties").

---

time served. If we were to remand for a competency determination and if the trial court could not determine whether Appellant was competent at the time of trial, then at the de novo retrial he would be subject to the felony charge and potential five-year sentence from resisting an officer with violence. *Compare* §§ 843.01 and 843.02, Fla. Stat. (2013).

*See also Bishop v. State*, 21 So. 3d 830, 832 (Fla. 1st DCA 2008) (discussing our "unrenunciable judicial duty" to correct fundamental error).[17]

A due process violation is fundamental error. "[F]or an error to be so fundamental that it can be raised for the first time of appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process." *State v. Jackson*, 616 So. 2d 1, 3 (Fla. 1993); *see also Pressley v. State*, 73 So. 3d 834, 836-37 (Fla. 1st DCA 2011) (holding error "equivalent to denial of due process" to be fundamental error).

In *Dougherty*, the Florida Supreme Court held "a trial court's failure to observe the procedures outlined in Florida Rules of Criminal Procedure 3.210-3.212—procedures determined to be adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial—deprives a defendant of his due process right to a fair trial." 149 So. 3d at 679. We recognized this holding in *Dougherty* in *Zern v. State*, 191 So. 3d 962, 965 (Fla. 1st DCA 2016), where we stated, "Because an independent competency finding is a due-process right that cannot be waived once a reason for a competency hearing has surfaced, the trial court fundamentally erred in failing to make such a finding."

In *Sheheane v. State*, 228 So. 3d 1178, 1180 (Fla. 1st DCA 2017), we held, "It is this right to the trial court's independent

---

[17] In determining that no fundamental error occurred here at least the en banc majority wisely does not attempt to overrule *Hendricks v. State*, 34 So. 3d 819 (Fla. 1st DCA 2010), and *Bishop v. State*, 21 So. 3d 830 (Fla. 1st DCA 2008). To do so, as suggested in the concurring opinion of Judge Winokur, would conflict with various Florida Supreme Court decisions going back over 60 years, such as *D.H. v. Adept Cmty. Servs., Inc.*, 43 Fla. L. Weekly S533, 2018 WL 5660595 (Fla. Nov. 1, 2018); *Bell v. State*, 289 So. 2d 388 (Fla. 1973); and *Redditt v. State*, 84 So. 2d 317 (Fla. 1955). To do so would also put us in conflict with decisions of other district courts, such as *Bain v. State,* 730 So. 2d 296, 302 (Fla. 2d DCA 1999), and *Randall v. Griffin*, 204 So. 3d 965 (Fla. 5th DCA 2016).

assessment of competency that lies at the heart of the due process requirement." There, we further held that failure to follow the dictates of *Dougherty* "is a denial of due process, resulting in fundamental error that requires our intervention despite Appellant's failure to preserve it below." *Sheheane*, 228 So. 3d at 1181. Therefore, based on established case law, we should address the error which occurred here since it was fundamental error which deprived Appellant of due process.[18]

As to my second point, no independent determination of Appellant's competency occurred here. At the hearing on August 13, 2014, the parties stipulated to Appellant's competency, and the trial court was prepared to accept the stipulation. The trial court may have thought such a stipulation was acceptable since the relevant events concerning the Appellant's competency occurred two months before the Florida Supreme Court in *Dougherty* held "nothing in our precedent or the State's argument persuades us that a defendant can stipulate to the ultimate issue of competency, even where the written reports reach the same conclusion." 149 So. 3d at 678.[19]

---

[18] I do not contend, as claimed by the en banc majority, that we must "act as standby appellate counsel and scour the record in each case for fundamental error." Majority Op. at 5 n.1. In fact "scouring" is clearly unnecessary when an error is obvious. By limiting an appellate court's ability to address error not raised by an appellant to only instances of jurisdictional or fundamental error, our ability to address unpreserved error is appropriately limited since jurisdictional or fundamental error both have objective standards. *See, e.g., Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970) (defining fundamental error as "error which goes to the foundation of the case" and noting that an appellate court should "exercise its discretion under the doctrine of fundamental error very guardedly").

[19] In August 2014, there was a split of authority among the district courts. The Fifth District allowed stipulations to competency in *Dougherty v. State*, 96 So. 3d 984 (Fla. 5th DCA 2012), while the Fourth District disallowed stipulations in *Macaluso v. State,* 12 So. 3d 914 (Fla. 4th DCA 2009). This court and the Florida Supreme Court had apparently not weighed in on

The transcripts of the hearings on August 13 and 14, 2014, show that at no time did the trial court disallow the stipulation or otherwise make clear that "the court decides" the issue of competency. *See* Fla. R. Crim. P. 3.212(c)(7). The written order finding Appellant to be competent likewise does not show an independent determination by the trial court; instead it shows only that the matter came before the court on "the report of Leslie Dellenbarger, Psy.D." "[T]hese written reports are advisory to the trial court" since a defendant's competency is a legal question for the trial judge to determine rather than a medical question. *Dougherty*, 149 So. 3d at 678. While the parties can stipulate to the admission of an expert report regarding competency, a trial court's determination of competency solely based on the stipulated admission of an expert report "improperly absolves the trial court from making an independent determination regarding a defendant's competency to stand trial. *Id.*

So here, as in *Zern*, the trial court's action "does not show an independent finding." 191 So. 3d at 965. Reversal and remand for an independent competency determination is therefore required per *Dougherty*, *Zern*, and numerous other cases. Because the majority affirms the due process violation which occurred here, I respectfully dissent.

————————————————

Melissa Joy Ford, Assistant Regional Conflict Counsel, Office of Criminal Conflict and Civil Regional Counsel, Tallahassee, for Appellant.

Ashley Moody, Attorney General; Trisha Meggs Pate, Tallahassee Bureau Chief, Criminal Appeals; Samuel B. Steinberg and Steven E. Woods, Assistant Attorneys General, Tallahassee, for Appellee.

———————————

the issue of stipulations to competency, so the trial judge here was free to decide whether to follow the Fourth or Fifth District. *See Pardo v. State*, 596 So. 2d 665 (Fla. 1st DCA 1992).